**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE LAGEN, | ) | |
| | ) | Case No. 12-cv-4056 |
| Plaintiff, | ) | |
| | ) | Judge Blanche M. Manning |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| UNITED CONTINENTAL HOLDINGS, INC. | ) | |
| and UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS
<u>AMENDED COMPLAINT</u>**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants United Continental Holdings, Inc. and United Air Lines, Inc. (collectively, "United") respectfully move to dismiss plaintiff's amended complaint in its entirety. The amended complaint is fatally deficient for several reasons.

First, this Court lacks subject matter jurisdiction. Because plaintiff has not alleged that he suffered any injury in fact, he lacks standing to bring the claims he has alleged. Plaintiff merely alleges that supposedly improper changes have been made that impact his status as a member of United's frequent flyer program, called MileagePlus. But he does not allege that this changed status has injured him in any way. Absent an injury in fact, plaintiff has no standing to bring suit.

Second, even if plaintiff were able to rectify that deficiency, the complaint still must be dismissed because the express terms of the MileagePlus program, which govern plaintiff's claim, demonstrate that there has been no breach of contract. Those terms were explicit that United had the right to make modifications to the program. While plaintiff failed to attach these terms to his

complaint because they doom his claim, he may not avoid dismissal by artful pleading. The changes about which plaintiff complains were expressly permitted by the applicable contract terms. Thus, he can maintain no claim for breach of contract.

Plaintiff has pleaded three extra-contractual claims: breach of the covenant of good faith and fair dealing, unjust enrichment and specific performance. Each fails for a number of reasons. First, all are preempted by the federal Airline Deregulation Act of 1978. In addition, plaintiff's unjust enrichment claim is not allowed under Illinois law because an express contract governs the parties' relationship, and plaintiff's claims for breach of the covenant of good faith and fair dealing and specific performance both fail because they are not stand-alone claims under Illinois law.

In further support of this motion, United submits the accompanying memorandum.

WHEREFORE, United respectfully requests that this Court dismiss plaintiff's amended complaint in its entirety.

Dated: July 17, 2012

Respectfully submitted,

/s/ Sondra A. Hemeryck
Patricia Brown Holmes
E-mail: pholmes@schiffhardin.com
Sondra A. Hemeryck
E-mail: shemeryck@schiffhardin.com
Ayad P. Jacob
E-mail: ajacob@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600

Attorneys for Defendants United Continental Holdings, Inc. and United Air Lines, Inc.

**Certificate Of Service**

I hereby certify that on July 17, 2012, a copy of the foregoing Defendants' Motion to Dismiss Amended Complaint, with accompanying memorandum in support, was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Sondra A. Hemeryck
Attorney for Defendants United Continental Holdings, Inc. and United Air Lines, Inc.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE LAGEN, ) | |
| ) | Case No. 12-cv-4056 |
| Plaintiff, ) | |
| ) | Judge Blanche M. Manning |
| v. ) | |
| ) | Magistrate Judge Young B. Kim |
| UNITED CONTINENTAL HOLDINGS, INC. ) | |
| and UNITED AIRLINES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

**I.     Introduction**

Plaintiff's amended complaint must be dismissed in its entirety. Plaintiff alleges that he attained certain benefits under United's frequent flyer program, MileagePlus, because of his status as a passenger who had flown more than one million miles on United. Plaintiff's amended complaint purports to assert four claims based on alleged recent changes to MileagePlus, which plaintiff contends reduced some of his benefits. Yet those changes were expressly permitted by the MileagePlus terms. Moreover, plaintiff has not alleged any injury due to the alleged changes. Thus, even taking his allegations as true, plaintiff's amended complaint cannot sustain this Court's jurisdiction, and none of its four counts states a valid claim.

As a predicate matter, this Court has no subject matter jurisdiction because Lagen lacks standing to bring his claims. He does not allege that the changes to the MileagePlus program have injured him in a concrete way. He also does not allege that he will be imminently harmed by United's changes to MileagePlus. Alleging neither a concrete injury nor an imminent injury,

Lagen has no standing to create a case or controversy, and this Court must dismiss the amended complaint for lack of jurisdiction.

Second, even if Lagen did have standing, the amended complaint still must be dismissed because the changes about which he complains were expressly permitted by the terms and conditions that govern the MileagePlus program. Lagen cites to no contract term that allegedly has been breached. That is because there is none. Rather, the MileagePlus terms always have expressly provided that benefit levels and rewards can change. These terms thus demonstrate that Lagen has no claim for breach of contract.

Lagen's three extra-contractual claims also must be dismissed on multiple grounds. First, well-settled United States Supreme Court precedent establishes that all three claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713. In addition, Lagen's three extra-contractual claims fail as a matter of Illinois law. Lagen's membership in MileagePlus is governed by an express contract, the MileagePlus terms and conditions. Illinois law does not permit a claim for unjust enrichment if the parties' relationship is governed by an express contract. Illinois law also does not recognize a separate claim for either the breach of the covenant of good faith and fair dealing, or for specific performance.

Plaintiff's amended complaint must be dismissed in its entirety.

## II. The Amended Complaint and the MileagePlus Program

Lagen alleges that he is a member of the MileagePlus program and has accumulated more than one million frequent flyer miles since he first enrolled in the program. (Amended Compl. ("Compl."), Doc. No. 4 at ¶ 7.)[1] His complaint regards his status as a Million Mile flyer, which was part of the MileagePlus program. (*Id*.) Lagen alleges, without any citation, that United was

---

[1] Originally known as Mileage Plus, the name of United's frequent flyer program was changed to eliminate the space between the words and has been called MileagePlus as of this year. (Compl. ¶ 23.)

2

not permitted to change any benefit related to the Million Mile flyer status. (*Id*. ¶ 15.) According to Lagen, once achieved, Million Mile flyer status was a permanent, "lifetime benefit." It was to include: (a) a one-time award of three system-wide upgrades; (b) two free regional upgrades annually; (c) a 100% mileage-accrual bonus on the miles the member flew; and (d) lifetime "Premier Executive" status in MileagePlus. (*Id*. ¶ 17.) Premier Executive status was awarded to customers who flew 50,000 or more miles per year. (*Id*. ¶ 14.)

Lagen alleges that after United Air Lines merged with Continental Airlines in October of 2011, improper changes were made to MileagePlus. (*Id*. ¶¶ 19, 22.) Specifically, Lagen complains that changes were made to his Million Mile flyer benefits, namely that: he will receive a 50% bonus on the miles flown with United, instead of a 100% bonus (*id*. ¶ 25); he no longer will receive two yearly regional upgrades (*id*. ¶ 27); and MileagePlus members who reach one million lifetime miles no longer will receive a one-time award of three system-wide upgrades (*id*. ¶ 26).

Lagen also alleges that Million Mile flyers are afforded "Gold" status in the current MileagePlus program, whereas prior to recent changes they were considered to be "Premier Executive" status. (*Id*. ¶ 24.) Lagen alleges that this designation is inferior because "Gold" is currently the third tier of status. (*Id*.) "Premier Executive" status, which no longer exists after the recent changes, previously was the second tier of status. (*Id*. ¶ 23.) Yet Gold status is the level for customers who fly 50,000 or more miles per year (*id*.), the same level as the "Premier Executive" status to which Lagen claims he was entitled. Thus, despite the change in name, Lagen's promised status is the same as it was previously, his complaints to the contrary notwithstanding. Finally, Lagen complains that all MileagePlus members can now more easily attain Million Mile flyer status due to the recent program changes (*id*. ¶ 28), putting Lagen in the

3

curious position of bringing a consumer class action by arguing that United has made the program more consumer friendly.

In addition to claiming the right to represent a world-wide class, Lagen alleges four causes of action based on these allegations: breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment and specific performance.

Though Lagen's amended complaint asserts a claim for breach of contract and repeatedly references certain MileagePlus terms and conditions, Lagen did not attach the terms to his amended complaint. That is because the plain language of those terms dooms his lawsuit. Indeed, for the entirety of Lagen's membership in MileagePlus, the MileagePlus terms have been explicit that "Mileage Plus membership and its benefits are offered at the discretion of United Airlines." (*See* Exhibit A, Declaration of Aileen Furlong ("Furlong Decl."), ¶ 3 and January 1993 Mileage Plus Program Rules, attached thereto as Exhibit 1, page 24.) The terms specified that:

> United has the right to terminate the Program, or to change the Program Rules, regulations, benefits, conditions of participation, or mileage levels, in whole or in part, at any time with or without notice, even though changes may affect the value of the mileage or Certificates already accumulated.

(*Id*.) The terms further provided that:

> United may, among other things, withdraw, limit, modify or cancel any award; [or] increase the mileage or number of Certificates required for any award; …

(*Id*.) The terms are also explicit that:

> Members, in accumulating mileage or Certificates, may not rely upon the continued availability of any award or award level, and members may not be able to obtain all offered awards or use awards to all destinations or on all flights.

(*Id*.) Moreover, the terms were explicit that "Participation in the Mileage Plus program (the 'Program') is subject to any terms and conditions, rules, regulations, policies and procedures

4

('Program Rules') that United may, at its discretion, adopt from time to time." (*Id.*) The terms further provided:

> The award structure is subject to modification, cancellation or limitation at United's discretion, with or without notice.

(*Id*. at page 29.)

Throughout Lagen's membership in MileagePlus, including in 2006 when he flew his one-millionth mile on United, the MileagePlus terms allowed United "to terminate the Program or to change the Program Rules, regulations, benefits, conditions of participation or mileage levels, in whole or in part, at any time, with or without notice, even though changes may affect the value of the mileage or certificates already accumulated." (Furlong Decl., ¶ 4 and March 2006 Mileage Plus program rules, attached thereto as Exhibit 2, at 20.)

While Lagen has tried to avoid these terms by not attaching them to his amended complaint, there is no dispute that they apply to the MileagePlus program. Lagen alleges that he is a member of MileagePlus and he seeks to maintain a claim that the MileagePlus terms have been breached.

**III.    Argument**

**A.    <u>Standard of Review</u>**

An action should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) when the court finds that it lacks jurisdiction because plaintiff lacks standing. *Doe v. County of Montgomery, Ill.*, 41 F.3d 1156, 1158 (7th Cir. 1994). In considering a Rule 12(b)(1) motion, "the district court must accept as true all material allegations of the complaint and must draw all reasonable inferences therefrom in favor of the plaintiff." *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996); *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 762 (N.D. Ill. 2011). The party invoking federal

5

jurisdiction bears the burden of establishing the necessary elements. *Retired Chicago Police Ass'n*, 76 F.3d at 862; *Pearson*, 790 F. Supp. 2d at 762.

In considering a Rule 12(b)(6) motion, a court should dismiss "if the plaintiff fails to make allegations that are enough to raise a right to relief above the speculative level and are sufficient to show a plausible entitlement to recovery under a viable legal theory." *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 945 (N.D. Ill. 2011) (internal quotation marks omitted).

Lagen is not the first plaintiff to try to avoid dismissal of a contract claim by not attaching the relevant contract. The law is settled that, pursuant to Fed. R. Civ. P. 10(c), "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss." *Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002); *see also Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010). "A plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Assocs. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). "The purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by failing to attach relevant documents." *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). "The court is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given the material." *Rosenblum*, 299 F.3d at 661 (citation omitted).

6

B.     **The Complaint Must Be Dismissed For Lack of Standing.**

If a federal court does not have subject matter jurisdiction, the case must be dismissed. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). Article III of the Constitution limits federal court jurisdiction to actual cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). Standing is an essential and unchanging part of the case-or-controversy requirement of Article III. *Id*. at 560. To have standing a plaintiff must allege he has suffered an injury in fact, which is (1) a concrete and particularized injury that is (2) actual or imminent, not conjectural or hypothetical. *Id*. (internal quotations omitted). Absent these allegations, a plaintiff does not have standing, and the action must be dismissed. *Allen v. Wright*, 468 U.S. 737, 755 (1984) (no standing in private school discrimination case where plaintiffs had never applied and had no plan to ever apply to the allegedly discriminatory school); *Doe*, 41 F.3d at 1162 (Rule 12(b)(1) motion granted when plaintiff, an attorney who had never entered the Montgomery County courthouse and had no plans to ever enter it, was found to have no injury in fact from religious messages in the courthouse).

From the facts alleged in the amended complaint, Lagen fails both the "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" prongs of the injury-in-fact test. Thus, he has no standing and, as in *Lujan*, *Allen* and *Doe*, his amended complaint must be dismissed.

Although Lagen alleges that he lost certain benefits as a result of the recent changes to his Million Mile flyer status within the MileagePlus program, *see supra* at 3, Lagen does not claim that he has flown or will fly on United in 2012 or that he has actually been denied any of the purportedly lost benefits. Thus, Lagen has not alleged any actual injury and any future injuries

7

are hypothetical and not imminent. As a result, Lagen lacks standing, and the amended complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

C. **The Amended Complaint Must Be Dismissed Under Rule 12(b)(6) For Failure To State A Claim.**

Even if the Court were to properly have jurisdiction, all of the claims in the amended complaint must be dismissed for failure to state a claim upon which relief can be granted.

1. **The Express MileagePlus Terms Demonstrate That Lagen Cannot Maintain Any Claim For Breach of Contract.**

Lagen's claim for breach of contract (Count I) must be dismissed because the plain language of the contract permits United to change or even eliminate the MileagePlus program. It is axiomatic that for Lagen to maintain a claim for breach of contract, he must allege the existence of a contract, and that United has breached one or more of the contract terms. *Asset Exch. II, LLC v. First Choice Bank*, 953 N.E.2d 446, 455 (Ill. App. 2011). As the Supreme Court of Illinois recently held, "In construing a contract, the primary objective is to give effect to the intention of the parties . . . . If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (citation omitted).

In this case, Lagen alleges that he is a member of the MileagePlus program, and that his status as a Million Mile flyer is part of that program. (Compl. ¶ 7). Thus, the terms of the MileagePlus program govern the parties' relationship and Lagen's claim for breach. Lagen's breach of contract claim alleges that changes in the MileagePlus program for 2012 constituted a breach of the program terms. (*Id*. ¶ 47.) He also alleges without citation or any support that the Million Mile flyer benefits were not subject to any changes. (*Id*. ¶ 15.) Lagen has not attached the MileagePlus terms to his amended complaint. The MileagePlus terms show that the changes about which Lagen complains were proper and expressly permitted.

8

Since at least 1993, when Lagen enrolled in MileagePlus, United's frequent flyer "Program Rules" have stated:

> Mileage Plus membership and its benefits are offered at the discretion of United Airlines, and United has the right to terminate the Program, or to change the Program Rules, regulations, benefits, conditions of participation, or mileage levels, in whole or in part, at any time with or without notice, even though changes may affect the value of the mileage or Certificates already accumulated.

(Furlong Decl., ¶ 3 and Ex. 1, January 1993 Mileage Plus Program Rules, at 24; *see also id.*, ¶4 and Ex. 2, March 2006 Mileage Plus Program Rules, at 20.) The terms further provide that "The award structure is subject to modification, cancellation or limitation at United's discretion." (*Id.*, Ex. 1 at 29.) The MileagePlus terms could not be more straightforward.

"It is axiomatic that a party cannot breach a contract by complying with its terms." *Asset Exch. II, LLC*, 953 N.E.2d at 455 (affirming dismissal of contract claim). When a plaintiff's breach of contract allegations "are not only unsupported, but are directly contradicted by the plain language in the parties' agreement," the correct disposition is to grant a defendant's motion to dismiss. *Reger Development, LLC v. National City Bank*, No. 08-C-6200, 2009 WL 1233898, at *3 (N.D. Ill. Apr. 28, 2009). A plaintiff cannot "close his eyes to the contents" of a contract and survive a motion to dismiss when the defendant has acted according to those terms. *Id*. at *4. *See also First Place Bank v. Skyline Funding, Inc.*, No. 10-CV-2044, 2011 WL 824612 (N.D. Ill March 4, 2011) (granting defendant's motion to dismiss when contract allowed defendant's actions); *Royal Sleep Prods., Inc. v. Restonic Corp.*, No. 07-C-6588, 2010 WL 1172555 (N.D. Ill. March 22, 2010) (granting defendant's motion to dismiss when contract allowed defendant's actions). While Lagen alleges without support that the contract terms were breached, the clear contract terms demonstrate that there has been no breach.

Other courts have held that changes to frequent flyer program terms did not support claims for breach of contract because the program terms expressly permitted those changes. *See*,

9

*Simon v. Continental Airlines, Inc.*, No. 1:09-CV-631, 2010 WL 429932 (N.D. Ohio Feb. 4, 2010), *aff'd*, 439 Fed. Appx. 542 (6th Cir. 2011), *cert. denied.*, 132 S.Ct. 2436 (2012) (summary judgment awarded to defendant airline on claim for breach of contract because frequent flyer program terms permitted the actions that were alleged to have constituted a "breach" of the terms); *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655 (Alaska 2005) (summary judgment for defendant airline on breach of contract claim affirmed because program terms permitted complained-of changes).

The same result is warranted in this case. Lagen cannot maintain a claim for breach when the MileagePlus terms are clear that United was permitted to make changes to its frequent flyer program. The breach of contract claim must be dismissed.

### 2. Lagen's Extra-Contractual Claims Are Preempted.

Lagen has pleaded three claims in addition to his claim for breach of contract. All three extra-contractual claims must be dismissed because they are preempted under the Airline Deregulation Act (the "ADA"). *See* 49 U.S.C. § 41713(b)(1). The ADA's preemption clause is broad, barring any claim imposing a state law obligation that "relat[es] to" the "rates, routes and services" of an airline. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The Supreme Court has held that frequent flyer programs relate to the "rates" and "services" of an airline, and thus come within the ADA's preemption clause. *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 226 (1995).

Congress enacted the ADA "[t]o ensure that the States would not undo federal deregulation with regulation of their own." *Morales*, 504 U.S. at 378. The Supreme Court has held that the ADA's preemption clause "bars state-imposed regulation of air carriers, but allows

10

room for court enforcement of contract terms **set by the parties themselves**." *Wolens*, 513 U.S. at 222 (emphasis added). The *Wolens* Court held that the ADA:

> stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the state dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, **with no enlargement or enhancement based on state laws or policies external to the agreement**.

*Wolens*, 513 U.S. at 232-33 (emphasis added).

Consequently, parties may bring contract claims against airlines, but other claims based on state-imposed obligations are preempted. The Seventh Circuit has held that courts must "distinguish between what the State dictates and what the airline itself undertakes . . . [courts must not supply] external norms." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 609 (7th Cir. 2000) (holding that a claim for fraudulent inducement was preempted) (citations omitted). "State common law counts as an 'other provision having the force and effect of law' for purposes of [the ADA]." *Id*. at 607. Lagen's claims for breach of the covenant of good faith and fair dealing, unjust enrichment and specific performance are preempted because they all seek to enforce state-imposed norms upon United.

In light of the Supreme Court's holding that the ADA has a "broad pre-emptive purpose," *Morales*, 504 U.S. at 383, courts have found suits similar to Lagen's preempted by the ADA. *Levitt v. Southwest Airlines Co.*, No. 11-C-8176, 2012 WL 695468 (N.D. Ill. March 5, 2012) (holding state law claim of unjust enrichment preempted by the ADA); *Buck v. American Airlines, Inc.,* 476 F.3d 29, 38 (1st Cir. 2007) (holding state law claims of unjust enrichment and breach of the duty of good faith and fair dealing preempted by the ADA); *Howell v. Alaska Airlines, Inc.*, 994 P.2d 901, 902 (Wash. Ct. App. 2000) (holding state law claims of breach of the duty of good faith and fair dealing and unjust enrichment were preempted by the ADA);

11

*Lehman v. USAIR Group, Inc.*, 930 F. Supp. 912, 915 (S.D.N.Y. 1996) (holding state law claim of unjust enrichment preempted by the ADA).

Lagen's claims for breach of the covenant of good faith and fair dealing, specific performance and unjust enrichment all are preempted by the ADA and must be dismissed.

### 3. Lagen's Extra-Contractual Claims Also Must Be Dismissed Because They Fail To State Any Claim.

In addition, apart from being preempted by the ADA, Lagen's three extra-contractual claims must be dismissed because none of them can be sustained under Illinois law.

"Illinois courts have consistently held that the covenant of good faith and fair dealing is not an independent source of duties for the parties to a contract." *Fox v. Heimann*, 872 N.E. 2d 126, 134 (Ill. App. 2007). For that reason, the Illinois Supreme Court has held that a separately pleaded claim for breach of the covenant of good faith and fair dealing is not a valid claim. *Voyles v. Sandi Mortgage Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001) "[The principle of] good faith and fair dealing from contract law . . . is used only as a construction aid in determining the intent of contracting parties." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996).

Moreover, when the covenant is employed to interpret a contract, there can be no violation of the covenant of good faith and fair dealing when a party acts in accord with parties' agreement. *Hill v. St. Paul Federal Bank for Savings*, 768 N.E.2d 322, 327 (Ill. App. 2002) (upholding dismissal of claim of breach of the covenant of good faith and fair dealing because the express terms of the contract allowed defendant's actions). As explained above, the changes about which Lagen complains were expressly permitted by the unambiguous MileagePlus terms. (Furlong Decl., ¶ 3 & Ex. 1, January 1993 Mileage Plus program rules, at 24, 29; *id.,* ¶ 4 & Ex. 2, March 2006 Mileage Plus program rules, at 20.) Accordingly, just as Lagen cannot maintain a

claim that there has been any breach of the MileagePlus terms, he also cannot maintain any claim that there has been a breach of the covenant of good faith and fair dealing.

Similarly, Lagen's specific performance claim fails because it is not an independent cause of action. As the Seventh Circuit held, "specific performance is a remedy, not a cause of action." *LaSalle Nat. Bank v. Metropolitan Life Ins. Co.*, 18 F.3d 1371, 1376 (7th Cir. 1994) (affirming dismissal of specific performance claim). *See also Chicago Police Sergeants Ass'n. v. City of Chicago*, No. 08-CV-4214, 2011 WL 2637203 (N.D. Ill. July 6, 2011) (granting motion to dismiss regarding plaintiff's specific performance claim). Lagen's claim for specific performance thus must be dismissed because it is not a properly pleaded cause of action.

Finally, Illinois law does not permit a plaintiff to bring a claim for unjust enrichment when an express contract governs the parties' relationship. Unjust enrichment is a claim for quasi-contract. *E.g., Prodromos v. Poulos*, 560 N.E.2d 942, 948 (Ill. App. 1990). "Quasi-contract is not a means for shifting a risk one has assumed under contract." *Industrial Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 104 Ill. App. 3d 357, 361 (Ill. App. 1982). "As a rule, plaintiffs cannot pursue quasi-contractual claims where there is an express contract between the parties." *Prodromos,* 560 N.E.2d at 948 (affirming motion to dismiss unjust enrichment claim). "When two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc. v. Horace Mann Service Corp.*, 383 F.3d 683 (7th Cir. 2004).

Lagen alleges that he has long been a member of MileagePlus. (Compl. ¶ 7.) Lagen's allegations regarding the changes to his Million Mile flyer status are a part of the MileagePlus program. (*Id*.) His membership in MileagePlus is governed by express terms and conditions, and he has sued alleging a breach of those terms. (*Id*. ¶¶ 12-30, 47.) Lagen's claim for unjust

13

enrichment is identical to his contract claim, alleging that through changes to MileagePlus, United "has refused to provide those benefits to Plaintiff and the Class." (Id. ¶ 58.) Lagen's claim, if he had one at all, would be for breach of the MileagePlus terms. The law does not permit him to maintain a duplicative claim for unjust enrichment.

All three extra-contractual claims must be dismissed because they are not permitted under Illinois law.

## IV. Conclusion

For the reasons above, Lagen's amended complaint should be dismissed in its entirety.

Dated: July 17, 2012

Respectfully submitted,

/s/ Sondra A. Hemeryck
Patricia Brown Holmes
E-mail: pholmes@schiffhardin.com
Sondra A. Hemeryck
E-mail: shemeryck@schiffhardin.com
Ayad P. Jacob
E-mail: ajacob@schiffhardin.com
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
Telephone: (312) 258-5500
Facsimile: (312) 258-5600

Attorneys for Defendants United Continental Holdings, Inc. and United Air Lines, Inc.