IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE LAGEN, on behalf of himself and all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) UNITED CONTINENTAL HOLDINGS, INC. ) and UNITED AIRLINES, INC., ) ) Defendants. ) | No. 12 C 4056 Judge Blanche M. Manning Magistrate Judge Young B. Kim |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff, George Lagen, on behalf of himself and all others similarly situated, by his undersigned attorneys Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint, states as follows:

## I. INTRODUCTION

Seeking to avoid answering for their sudden and unilateral decision to deprive customers of valuable, bargained-for benefits of the Mileage Plus Program, Defendants United Continental Holdings, Inc. and United Airlines, Inc. (collectively, "Defendants") now move to dismiss Plaintiff George Lagen's ("Plaintiff") Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants' Motion should be denied in its entirety. The Amended Complaint more than sufficiently establishes Plaintiff's standing to assert his claims and pleads causes of action for breach of contract and breach of the covenant of good faith and fair dealing. The Amended Complaint also sufficiently states Plaintiff's claims for recovery in the form of damages and equitable relief, including specific performance. Defendants attach certain brochures to their Motion but give no indication of any assent to the terms of those

documents by Plaintiff or anyone else. Meanwhile, Plaintiff has fully pled the terms of the contract upon which he sues. Plaintiff's claims should certainly not be dismissed even before discovery can be taken to fully determine the facts and circumstances surrounding Defendants' actions.

## II. ARGUMENT

### A. Plaintiff Has Standing to Pursue His Claims

To accept Defendants' argument that Plaintiff has not sufficiently alleged facts to establish standing would require turning a blind eye to many of the allegations of the Amended Complaint. "In ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (internal citation omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the required elements of standing." *Id.*, *citing*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Those elements are (i) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision. Id. Defendants' sole argument regarding standing is that Plaintiff has not alleged an "injury in fact," and specifically that he does not meet the "concrete and particularized" and "actual or imminent, not conjectural or hypothetical" requirements.

Defendants' statement that "Lagen has not alleged any actual injury and any future injuries are hypothetical and not imminent" is squarely belied by the Amended Complaint, which contains, among other allegations establishing standing, the following:

- "Million Mile Flyers' bargained-for benefits have been taken away in breach of United's contractual agreements." Am. Complaint (Doc. 4) at ¶4.

- "[Plaintiff] has been a loyal United Airlines customer for years and, based upon the terms of the Mileage Plus Program, has spent hundreds of thousands of dollars in purchasing airline tickets for United flights. He, like thousands of others, did so on the belief his loyalty and massive expenditures would result in United standing behind its pledge to award him with the promised lifetime benefits as a Million Mile Flyer." Id. at ¶5.

- "Mr. Lagen, like thousands of others, has seen his bargained-for benefits unlawfully stripped away." Id. at ¶6.

- "[Plaintiff] has flown extensively on United Airlines for years and was a member of United Airlines' Mileage Plus Program. Id. at ¶7.

- "United took away the promised and bargained-for lifetime benefits of Million Mile Flyers." Id. at ¶22.

- "When the new MileagePlus Program went into effect on January 1, 2012, it resulted in an immediate and significant retroactive demotion of benefits to Million Mile Flyers." Id. at ¶23.

- "Plaintiff has been subject to "a severe cut in benefits including fewer bonus miles for flights, a reduced chance of upgrades, and lower priorities in boarding and seating assignments." Id. at ¶24.

- "Million Mile Flyers no longer receive a 100% bonus on the miles they fly with United. Instead, the percentage has been cut in half to only 50%." Id. at ¶25.

- "[F]irst time Million Mile Flyers no longer get a one-time award of three system-wide upgrades." Id. at ¶26.

- "Million Mile Flyers no longer get the promised and bargained-for two regional upgrades per year." Id. at ¶27.

- "Million Mile Flyers paid substantial consideration for their promised lifetime benefits in that they were required to obtain all the required miles by purchasing tickets only for United flights." Id. at ¶28.

- "[United] intends to continue its denial of the Class's bargained-for benefits." Id. at ¶30.

- "United breached its obligations and retroactively ceased providing Plaintiff and the Class their bargained-for benefits under the Million Mile Program." Id. at ¶47.

- "As a result of United's breach, Plaintiff and the Class have been damaged." Id. at ¶48.

These allegations, which must be accepted as true for purposes of Defendants' Motion, establish that Plaintiff has suffered an injury in fact due to Defendants' actions. To satisfy this aspect of standing, Plaintiff need only show that he has "sustained or [is] 'immediately in danger of sustaining some direct injury.'" *New West v. City of Joliet, Nos.,* 2012 WL 366733 at *2 (N.D. Ill. 2012.) (internal quotation marks and citations omitted). Plaintiff's allegations more than sufficiently state that he was promised specific benefits by Defendants, that he paid significant amounts of money for such benefits, and that such benefits were taken away from him and the proposed class by Defendants, to his injury and that of the proposed class. As such, he has thoroughly stated the basis for his claim that he "sustained. . . direct injury." Id. Therefore, Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) is without merit and should be denied.

B.  **Plaintiff Has Sufficiently Pled His Claim for Breach of Contract**

Contrary to Defendants' arguments, Plaintiff's Amended Complaint, itself, sets forth the terms of the contract upon which Plaintiff sues, and thus sets forth a plausible claim for contractual relief. Plaintiff has not sued upon the brochures attached to Defendants' Motion. Indeed, Defendants have produced no indication of assent by Plaintiff or anyone else to the language of those documents or any part thereof. Plaintiff's claims should certainly not be dismissed based on Defendants' unsupported allegation that documents attached to its Motion to Dismiss somehow form a contract. Moreover, even if Plaintiff had assented to the language of the brochures, such language cannot form the basis of a contract because, by the express terms of the brochures, Defendants would have no obligation, whatsoever, toward Plaintiff or anyone else, as they purportedly had the right to terminate the program or reduce benefits to zero, for

any reason or no reason, from the outset of the relationship or at any time thereafter. The brochure language therefore seeks to form an illusory agreement lacking contractual consideration, or mutuality of obligation. Meanwhile, the terms set forth in the Amended Complaint state a plausible claim for breach of contract. Defendants' Motion should be denied.

"On a motion to dismiss under Rule 12(b)(6), the Court accepts the facts stated in the complaint as true and draws reasonable inferences in favor of the plaintiff." *Levitt v. Southwest Airlines Co.*, 2012 WL 695468 at *2 (N.D. Ill. 2012), *citing*, *Hallinan v. Fraternal Order of Police*, 570 F.3d 811, 820 (7th Cir. 2009). "To survive the motion, the complaint must include enough facts to state a claim for relief that is plausible on its face." *Levitt*, 2012 WL 695468 at *2, *citing*, *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Levitt*, 2012 WL 695468 at *2.

Defendants attach to their Motion the Declaration of Aileen Furlong and what appear to be two brochures about the Mileage Plus Program. Doc. 10-1. This Court has previously addressed the effect of such attachments:

> As is well known, a motion to dismiss under Rule 12(b)(6) challenges only the sufficiency of the complaint for failure to state a claim upon which relief may be granted, *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997), and the court's inquiry is generally **limited to only the "pleadings."** *See* Fed.R.Civ.P. 12(b)(6). If documents outside the pleadings are placed before the court on a Rule 12(b)(6) motion, the court must either exclude such documents or convert the motion to dismiss to a motion for summary judgment and afford the plaintiff an opportunity to submit additional evidentiary material. *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1992). The Seventh Circuit, however, has created a narrow exception to this general rule when a defendant attaches a document to its motion to dismiss and the document is **mentioned in a plaintiff's complaint and "central" to the plaintiff's claims**. *E.g.*, *Id*. ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("[T]his is a narrow exception aimed at cases interpreting, for example, a contract."). In such circumstances, the documents are considered part of the

pleadings and may be considered in ruling on a motion to dismiss. *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). *Collins v. Sparacio*, 2003 WL 21254256 at *1 (N.D. Ill. 2003) (emphasis added) (refusing to consider documents attached to motion to dismiss even though such documents were mentioned in the complaint, because they were not "central" to plaintiff's claims).

The documents attached to Defendants' Motion should be excluded from consideration.[1] They do not fall within the "narrow" exception to the rule as stated by the Seventh Circuit because they are not mentioned in the Amended Complaint and are not "central" to Plaintiff's claims. Plaintiff does not seek to enforce any term of the brochures Defendants attach and, in fact, specifically rejects Defendants' unsupported assertion that these documents form the basis of an enforceable contract. The attachments are not signed in any manner, do not recite any obligations of Defendants, and otherwise do not give any indication of a contractual arrangement, as opposed to a unilateral expression of Defendants' desire to attract customers while not being held accountable for anything in connection with the Mileage Plus Program. Doc. 10-1 at 4-33. In short, the attachments are advertisements. The disclaimers in those advertisements are certainly not contracts and, for present purposes, do not contain language pertinent to Plaintiff's claims. The contract Plaintiff does seek to enforce is set forth in the Amended Complaint:

- "To become a Million Mile Flyer, customers had to actually fly 1,000,000 or more miles solely on United flights." Am. Complaint (Doc. 4) at ¶2.

- "In exchange for Million Mile Flyers' purchase of tickets, United provided them with certain lifetime benefits." Id. at ¶3.

---

1. If the Court allows consideration of the documents, Plaintiff asks that he be allowed to present evidentiary material of his own after conducting sufficient discovery, consistent with Federal Rule of Civil Procedure 12(d). *See Collins*, 2003 WL 21254256 at * 2.

- "Under [the Mileage Plus Program], frequent flyers on United Airlines would receive valuable benefits in exchange for purchasing tickets to fly on United flights. Id. at ¶12.

- "United awarded customers who had flown one million miles with lifetime Premier Executive status, inclusive of all Premier Executive benefits. To obtain this status, a United customer needed to actually fly one million or more miles on United flights only." Id. at ¶14.[2]

- "The Million Mile Program was not simply a gimmick or give-away product under which United could change the rules any time it wanted. It was a bargained-for program whereby consideration was given – and taken – by both United and the Million Mile Flyer members." Id. at ¶15.

- "Given the hundreds of thousands of dollars Million Mile Flyer members would pay for the required airline tickets and corresponding status, United provided – in exchange – certain lifetime benefits." Id. at ¶16.

- "The lifetime benefits Million Mile Flyers paid consideration for included:

    a.   A one-time award of three system-wide upgrades;

    b.   Two free regional upgrades every year;

    c.   A 100% redeemable bonus on the miles the customer flies every year; and

    d.   Lifetime Premier Executive status in United's Mileage Plus Program, providing extra benefits and priorities such as booking availability, pre-boarding advantages, upgrade possibilities, and seating priority." Id. at ¶17 (emphasis added).

---

[2.] Defendants' argument that the current program's "Gold" status is the equivalent of the former program's "Premier Executive" status, because both share the threshold requirement of flying 50,000 or more miles per year, is highly misleading. Doc. 10 at 3. First, "Premier Executive" was formerly the second tier while, under the new program, it is now the third tier, and benefits are diminished accordingly. Am. Complaint (Doc. 4) at ¶14; Doc. 10 at 3. Second, Plaintiff's Amended Complaint is based not on Defendants' renaming of the tier structure, but rather on Defendants' unilateral withdrawal of contractually guaranteed benefits for those who, like Plaintiff, reached Million Mile Flyer status. Moreover, Defendants' comment that Plaintiff is in the "curious position of bringing a consumer class action by arguing that United has made the program more consumer friendly" is absurd. Doc. 10 at 3-4. Plaintiff seeks to represent a class of Defendants' customers who, like Plaintiff, were members of the Million Mile Program. Am. Complaint (Doc. 4) at ¶31. There is nothing "curious" about his allegations in this regard, as Plaintiff does not purport to represent airline consumers, in general (which he certainly could not do).

- "Million Mile Flyers obtained that status only through the purchase of actual tickets for United flights." Id. at ¶18.

- "United received substantial compensation and consideration from Million Mile Flyers in exchange for the benefits it now has taken away." Id. at ¶29.

- "Plaintiff and the Class had a contractual relationship with United." Id. at ¶42.

- "The contractual relationship was supported by consideration by and for all parties." Id. at ¶43.

- "Plaintiff and the Class purchased airline tickets for United flights." Id. at ¶44.

- "In return, United provided the benefits discussed above that were associated with membership in the Million Mile Program." Id. at ¶45.

- "Plaintiff and the Class purchased millions of dollars of airline tickets from United in exchange for lifetime benefits under the Million Mile Program. Id. at ¶61.

At this stage, Plaintiff is not required to definitively set forth each and every term of his contract with Defendants or even each element of his breach of contract cause of action. "A plaintiff is not required to 'plead facts that, if true, establish each element of a cause of action.'" *Corbisiero v. Bank of America Corp.*, 2009 WL 2386141 at *2 (N.D. Ill. 2009), *quoting*, *Sanjuan v. Amer. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and "[m]atching facts against legal elements comes later"). Nevertheless, the above-quoted allegations of the Amended Complaint do set forth the terms upon which Plaintiff sues and specifically allege the existence of the contract, the consideration for such contract, and the manner in which it has been breached. Moreover, Plaintiff has also alleged that, upon the merger of Continental and United, Defendants gave assurances to Million Mile Program members including the following: "[y]ou will continue to receive your benefits as you always have. Lifetime elite benefits will continue in the single, combined program, which

will be announced by the end of 2011." Am. Complaint (Doc. 4) at ¶21.[3] While Plaintiff has stated a claim for breach of contract even without such allegations, the parties' course of dealings is relevant to the analysis of Defendants' Motion. *Lachmund v. ADM Investor Services, Inc.*, 191 F.3d 777, 787 (7th Cir. 1999) ("In order to gain the fullest understanding possible of the parties' agreement and their purpose, we often must consider the course of dealings between the parties and the totality of the business relationship.").

Even if the exhibits attached to Defendants' Motion could be considered terms of a purported contract with Plaintiff, such terms would be unenforceable because they set forth an agreement which is illusory and unsupported by valid contractual consideration. "[B]oth parties to a contract must be bound for the agreement to be a valid contract." *S.J. Groves & Sons Co. v. State*, 444 N.E.2d 131, 134 (Ill. 1982) (overruled on other grounds by Rossetti Contracting Co., Inc. v. Court of Claims, 485 N.E.2d 332 (Ill. 1985)). "[A]s a general proposition. . . where one of the parties to an agreement has the right arbitrarily to terminate the contract mutuality is lacking." *People v. Davidson*, 103 N.E.2d 600, 604 (Ill. 1952). "In its most elemental sense, the doctrine of mutuality of obligation means that unless both parties to a contract are bound by its terms, neither is bound." *Schwinder v. Austin Bank of Chicago*, 809 N.E.2d 180, 193 (Ill. App. 1 Dist. 2004) (internal citation omitted). "Mutuality of obligation in bilateral contracts is but another way of stating that consideration is essential." Id. (citing 25 R. Lord, Williston on Contracts § 67:42, at 332 (4th ed. 2002)). "The absence of mutuality of obligation could render the contract invalid and unenforceable. Such a mutuality of obligation issue arises when there is

---

[3.] Since filing the Amended Complaint, Plaintiff has learned of additional definitive assurances made by Defendants that lifetime Million Mile Program benefits would not change. As stated herein, consideration of such materials is neither appropriate nor desirable at this stage because Defendants are merely challenging the sufficiency of the allegations of the Amended Complaint. However, should the Court find it appropriate to consider Defendants' exhibits, Plaintiff asks that he be allowed to submit further evidence of course of dealings after conducting sufficient discovery.

one party to a contract that has an unfettered right to terminate the contract." Id. (internal citations and quotation marks omitted).

In *Stender v. National Bank of Chicago*, a contract for sale of an apartment complex purportedly allowed the purchaser to approve or disapprove of the documents relating to the mortgages on the property and, if purchaser disapproved, the contract could be canceled "in his sole discretion." *Stender v. National Bank of Chicago*, 449 N.E.2d 873, 878 (1st Dist. 1983). The court held that this term rendered the contract unenforceable for lack of mutuality of obligation. *Stender*, 449 N.E.2d at 878; *see also Gardiakos v. Vanguard Communications, Inc.*, 350 N.E.2d 210, 212 (3rd Dist. 1976) ("Mutuality of obligation is lacking, and neither party is bound to an executory contract where one of the parties has the right to arbitrarily terminate it.").

In accordance with these authorities, the documents attached to Defendants' Motion set forth terms which, even if ostensibly agreed to by Plaintiff, would constitute an utterly illusory agreement, lacking in mutuality of obligation. The January 1993 "Program Rules" include the following as part of the "General Conditions":

> ***Mileage Plus membership and its benefits are offered at the discretion of United Airlines, and United has the right to terminate the Program, or to change the Program Rules, regulations, benefits, conditions of participation, or mileage levels, in whole or in part, at any time with or without notice, even though changes may affect the value of the mileage or Certificates already accumulated. United may, among other things, withdraw, limit, modify or cancel any award***; increase the mileage or number of blackout days; or limit the number of seats available to any or all destinations. Members, in accumulating mileage or certificates, may not be able to obtain all offered awards or use awards to all destinations or on all flights.

Doc. 10-1 at 16 (emphasis added). The March 2006 brochure contains nearly identical language. (Doc. 10-1 at 32, under "General Conditions" and under "Award Redemption," item 37.) According to this language, Defendants have effectively made no enforceable promise or commitment to do anything at all. Instead, they have purportedly awarded themselves complete "discretion" to do as they please with respect to Mileage Plus members "at any time with or

- 10 -

without notice," including cancelling any and all awards for any reason or no reason.  This is the antithesis of a contractual obligation supported by valid consideration.  *S.J. Groves & Sons Co.*, 444 N.E.2d at 134; *Schwinder*, 809 N.E.2d at 193; *Gardiakos*, 350 N.E.2d at 212.  Therefore, the brochures Defendants attach to their Motion cannot form the basis of an enforceable contract which would render Plaintiff's contractual claims implausible.  However, the fact that Defendants' exhibits do not form the basis of an enforceable contract does not mean there is no contract between Plaintiff and Defendants entitling Plaintiff to relief.  As discussed above, the terms of the contract upon which Plaintiff sues are stated in the Amended Complaint, itself.  Those allegations form a basis for contractual relief which is, for present purposes, more than merely plausible.  Defendants' Motion should therefore be denied.

C. **Plaintiff's Claim for Breach of the Covenant of Good Faith and Fair Dealing Has Not Been Preempted by the Federal Airline Deregulation Act**

Defendants argue Plaintiff's claim for breach of the covenant of good faith and fair dealing is an effort to impose a state-imposed regulation upon Defendants, and therefore, argue Defendants, the claim has been preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. §41713.  In this regard, Defendants are inconsistent in claiming that the covenant of good faith and fair dealing is simultaneously "extra contractual" and "not an independent source of duties for the parties to a contract." Doc. 10 at 10, 12.  Plaintiff is entitled to relief for breach of this implied covenant precisely because it is a term of the parties' contract, and therefore the basis for Plaintiff's additional claim for breach of contract.  *See F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997) ("[A]bsent express disavowal, a covenant of good faith and fair dealing is implied in every Illinois contract.")  Moreover, the United States Supreme Court has made clear that such claims do not fall within the purview of the FAA's preemption clause.  Defendants' Motion should therefore be denied in this respect.

While observing that the ADA's preemption clause has the purpose of preventing states from nullifying the effects of the ADA "through the application of restrictive state laws," the Supreme Court found as follows:

> We do not read the ADA's preemption clause, however, to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings. As persuasively argued by the United States, terms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§] 1305(a)(1)." Brief for United States as *Amicus Curiae* 9. *Cf. Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 526, 112 S.Ct. 2608, 2612, 120 L.Ed.2d 407 (1992) (plurality opinion) ("[A] common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a 'requirement ... imposed under State law' within the meaning of [Federal Cigarette Labeling and Advertising Act] § 5(b)."). A remedy confined to a contract's terms simply holds parties to their agreements-in this instance, to business judgments an airline made public about its rates and services.

*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 228-29 (1995). Thus, contractually-centered "common law" claims, as opposed to state regulatory enactments directed at those areas governed by the ADA, are not preempted. Based on the Supreme Court's ruling in Wolens and the structure of the ADA itself, the Ninth Circuit has recently expressly held that claims for breach of the covenant of good faith and fair dealing are not preempted by the ADA. *Ginsberg v. Northwest, Inc.*, 2012 WL 2869981 (9th Cir. 2012). That court noted that the preemption clause, 49 U.S.C. Section 41713(b), cannot be read in isolation but rather must be viewed in light of the ADA's "savings clause," 49 U.S.C. Section 40120(c), providing that "[a] remedy under this part [the ADA] is in addition to any other remedies provided by law." *Ginsberg*, 2012 WL 2869981 *3, 6-7. The court found as follows:

> In *Charas* [160 F.3d 1259 (9th Cir. 1998)] we concluded that, taken together, the savings clause and preemption clause "evidence congressional intent to prohibit states from regulating the airlines while preserving state tort remedies that already existed at common law, providing that such remedies do not significantly impact federal deregulation." *Id.* at 1265. Similar logic would apply to state contract

- 12 -

>remedies that already existed at common law, such as the implied covenant of good faith and fair dealing. *See Wolens*, 513 U.S. at 232–33 (explaining that the preemption clause, "read together with the ... savings clause," would permit "state-law-based court adjudication of routine breach-of-contract claims").

*Ginsberg*, 2012 WL 2869981 *6 (emphasis added). Therefore, concluded the Ninth Circuit, "[a] claim for breach of the implied covenant of good faith and fair dealing does not interfere with the deregulatory mandate." *Ginsberg*, 2012 WL 2869981 *7. The court summarized the analysis in that case as follows: "Northwest is free to invest in a frequent flier program; however, that economic decision means that the airline has to abide by its contractual obligations, within this deregulated context, pursuant to the covenant of good faith and fair dealing." *Ginsberg*, 2012 WL 2869981. The facts of Ginsberg cannot be distinguished from those of this case and no Seventh Circuit opinion conflicts with its holding. The Ninth Circuit's reasoning is sound and should therefore be applied here.

Contrary to Defendants' suggestion, Plaintiff does not argue that the covenant of good faith and fair dealing is an "independent source of duties" for the parties to the contract. Doc. 10 at 12. To read the Illinois cases on this point in the manner urged by Defendants would be to eliminate the covenant from consideration entirely, which is not the state of Illinois law. *See Fox v. Heimann*, 872 N.E.2d 126, 134 (1st Dist. 2007) ("Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."). Rather, the cases cited by Defendants stand for the proposition that the covenant of good faith and fair dealing cannot be viewed as an independent tort action, separate and apart from the parties' contractual duties and rights. *Fox v. Heimann*, 872 N.E.2d at 134; *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126 (Ill. 2001) ("[T]his court refused to recognize an

independent action in tort for breach of an implied covenant of good faith and fair dealing."). Defendants' additional argument that "there can be no violation of the covenant of good faith and fair dealing when a party acts in accord with the parties' agreement" simply puts forth the evidentiary and factual disputes in this case as a reason for dismissal of Plaintiff's claim. Of course, the question before the Court is not whether Plaintiff or Defendants should prevail on the merits, but instead whether Plaintiff has stated a plausible claim for relief. Plaintiff has done so. Defendants' Motion should therefore be denied.

**D.    Plaintiff Is Entitled to Specific Performance
        as a Remedy for Defendants' Breach of Contract**

Plaintiff has pled specific performance in a separate count not as an "independent cause of action" (Doc. 10 at 13), but to clarify and emphasize that he seeks this form of equitable, contractual relief in addition to damages. Am. Complaint (Doc. 4) at ¶¶60-64. Defendants cite no authority for the proposition that Plaintiff's designation of specific performance as a separate count must correlate with an independent cause of action. There is no such requirement in the Federal Rules of Civil Procedure. Moreover, Rule 10(b) expressly allows the use of separate counts to "promote clarity." The remedy of specific performance is fundamentally different than the remedy of monetary damages. *Rothner v. Mermelstein*, 579 N.E.2d 1022, 1026 (1st Dist. 1991) ("Specific performance refers to the performance of the very (specific) thing called for by the contract. This equitable remedy stands in contrast to the payment of money as a substitute for performance. The remedy is based on the desire to do more perfect and complete justice, which the remedy at law would fail to give."). Plaintiff's pleading of such remedy in a separate count therefore promotes clarity, particularly in light of the fact that Plaintiff seeks relief on behalf of himself and a large class of Defendants' customers. Defendants therefore fail to state a

legal reason why paragraphs 60 through 64 of the Amended Complaint, pertaining to specific performance, should be dismissed.

### III.  CONCLUSION

Defendants' Motion to Dismiss fails to establish why any of Plaintiff's claims should be dismissed.  The Amended Complaint more than sufficiently establishes Plaintiff's standing to bring his claims.  Plaintiff has pled the terms of the contract breached by Defendants with substantial detail, and the documents attached to Defendants' Motion are simply not related to Plaintiff's claims; nor do they constitute terms of any enforceable contract.  Plaintiff is therefore entitled to pursue his claims for relief in the form of monetary damages and specific performance.  Plaintiff respectfully asks that Defendants' Motion to Dismiss be denied, and such other relief as the Court deems just and proper.  Should the Court be inclined to dismiss the Amended Complaint or any portion thereof, Plaintiff respectfully requests leave for a reasonable amount of time to amend the Amended Complaint to correct any deficiencies.  *See Holladay v. CME Group*, 2012 WL 3096698 at *5 (N.D. Ill. 2012) (granting motion to dismiss without prejudice and granting leave to amend complaint).

GEORGE LAGEN, on behalf of himself and all others similarly situated,

By: /s/ David H. Latham
One of His Attorneys

| | |
|---|---|
| David H. Latham (#6198792) | John F. Edgar |
| Law Offices of David H. Latham | Michael D. Pospisil |
| Suite 1400 | Edgar Law Firm LLC |
| 150 North Wacker Drive | 1032 Pennsylvania Ave. |
| Chicago, Illinois  60606 | Kansas City, Missouri 64105 |
| (312) 782-1910 | (816) 531-0033 |
| | |
| dhlatham@lathamlaw.net | jfe@edgarlawfirm.com |
| | mdp@edgarlawfirm.com |

## **CERTIFICATE OF SERVICE**

David H. Latham certifies that a copy of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss Amended Complaint was served upon:

>Patricia Brown Holmes
>Sondra A. Hemeryck
>Ayad P. Jacob
>Schiff Hardin LLP
>233 South Wacker Drive
>Suite 6600
>Chicago, Illinois 60606

by electronic means on this 22nd day of August 2012.

>/s/ David H. Latham
>_____
>David H. Latham