IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE LAGEN, ) | |
| ) | Case No. 12-cv-4056 |
| Plaintiff, ) | |
| ) | Judge Harry D. Leinenweber |
| v. ) | |
| ) | |
| UNITED CONTINENTAL HOLDINGS, INC. ) | |
| and UNITED AIRLINES, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' ANSWER TO AMENDED CLASS ACTION COMPLAINT**

Defendants United Continental Holdings, Inc. and United Air Lines, Inc. (collectively, "Defendants"), by their attorneys, for their answer to the Amended Class Action Complaint (Doc. 4) ("Complaint") filed by plaintiff George Lagen ("Plaintiff"), state as follows:

**ANSWER**

**I. Nature of the Case**

1. For decades, United Airlines touted its unrelenting loyalty to its most frequent customers. In exchange for customers' purchase of tickets from United, customers would receive various benefits under United's frequent flyer program called Mileage Plus. Customers in Mileage Plus who have flown 1,000,000 or more miles on United flights were known as Million Mile Flyers in the Program (sometime referred to herein as the "Million Mile Program").

**ANSWER:** Defendants admit that United Air Lines, Inc. ("United") has a long-standing frequent flyer program, formerly called Mileage Plus and now called MileagePlus, that the program is designed to reward United's most frequent customers for their loyalty to United, that customers who enroll in MileagePlus receive various benefits for accumulating mileage credit by travelling on United flights, as well as by engaging in other activities such as purchasing items with a United credit card or renting cars from companies that have partnered with United, and

that MileagePlus members who have flown one million or more miles on United flights, or who reached million mile status as a result of a one-time mileage recalibration that took place on December 31, 2011, are sometimes referred to as "Million Mile Flyers." Defendants deny that there is now or ever has been a "Million Mile Program" that is separate or distinct from the MileagePlus program, and deny the remaining allegations contained in paragraph 1.

2. To become a Million Mile Flyer, customers had to actually fly 1,000,000 or more miles solely on United flights. Unlike certain other frequent flyer programs, including pre-merger Continental's One Pass, there were no other ways for a Million Mile Flyer to obtain miles other than purchasing a United ticket.

**ANSWER:** Defendants admit that, except for a one-time recalibration that took place on December 31, 2011, in order to qualify for Million Mile Flyer status customers must enroll in the MileagePlus program and must actually fly one million or more miles solely on United flights. Further answering, defendants state that on December 31, 2011, United made a one-time recalibration of the mileage earned by MileagePlus members toward Million Mile Flyer status, including for the first and only time miles earned by means other than flying on United flights, such as by using a United credit card or flying on partner airlines. Subject to that exception, defendants admit the allegations contained in the last sentence of paragraph 2.

3. In exchange for Million Mile Flyers' purchase of tickets, United provided them with certain lifetime benefits. As explained in detail below, these bargained-for lifetime benefits are valued in the millions of dollars.

**ANSWER:** Defendants deny the allegations contained in paragraph 3.

4. However, with a swift stroke of a pen, United has fleeced its most loyal customers – the Million Mile Flyers – out of their bargained-for benefits. The Million Mile Flyer lifetime benefits were gutted upon the completed merger between United

and Continental Airlines. Million Mile Flyers' bargained-for benefits have been taken away in breach of United's contractual agreements.

**ANSWER:** Defendants deny the allegations contained in paragraph 4.

5. George Lagen had been recognized by United Airlines for flying one million miles with United tickets on planes operated by United Airlines. He has been a loyal United Airlines customer for years and, based upon the terms of the Mileage Plus Program, has spent hundreds of thousands of dollars in purchasing airline tickets for United flights. He, like thousands of others, did so on the belief his loyalty and massive expenditures would result in United standing by its pledge to award him with the promised lifetime benefits as a Million Mile Flyer.

**ANSWER:** Defendants admit that Plaintiff qualified for Million Mile Flyer status by enrolling in the MileagePlus program and flying over one million miles on United flights. Defendants deny that United made any enforceable pledge or promise to Plaintiff, including but not limited to any promise of lifetime benefits, and deny the remaining allegations contained in paragraph 5.

6. Unfortunately, Mr. Lagen, like thousands of others, has seen his bargained-for benefits unlawfully stripped away. He therefore brings this action to protect his (and others') bargained-for rights.

**ANSWER:** Defendants deny the allegations contained in paragraph 6.

## II. The Parties

7. Plaintiff George Lagen is a resident of Chicago, Illinois. Mr. Lagen has flown extensively on United Airlines for years and was a member of United Airlines' Mileage Plus Program. More specifically, Mr. Lagen flies, on average, between 200,000 and 250,000 miles per year. For perspective purposes, a plane trip around the world is approximately 20,000 miles. Given his extensive travel, Mr. Lagen had achieved Million Mile Flyer status in the Mileage Plus Program.

**ANSWER:** Defendants admit that from 1994 through 2011, Plaintiff flew approximately 1,255,629 miles on United flights and that he qualified for Million Mile Flyer status in

September of 2006. Defendants deny that Plaintiff has ever flown between 200,000 and 250,000 miles in a single year on United flights, and are without knowledge or information sufficient to form a belief as to the number of miles Plaintiff has flown on other airlines. Defendants state that, according to their records, Plaintiff is a resident of Palos Heights, Illinois, and therefore deny the allegation that Plaintiff is a resident of Chicago, Illinois. Defendants deny the remaining allegations contained in paragraph 7.

8. Defendant United Continental Holdings, Inc. is a publicly held company incorporated under Delaware law. Its headquarters and principal place of business are located in Chicago, Illinois. It was formed via a merger that closed on October 1, 2010, between United Airlines and Continental Airlines. It operates and controls the current frequent flyer program called MileagePlus, described below.

**ANSWER:** Defendants admit the allegations contained in the first two sentences of paragraph 8, and further admit that United Continental Holdings, Inc. was formed via a merger that closed on October 1, 2010 between United Air Lines, Inc. and Continental Airlines, Inc. Defendants deny the allegations contained in the last sentence of paragraph 8.

9. Defendant United Airlines, Inc. is a wholly owned subsidiary of United Continental Holdings, Inc. United Airlines, Inc. is located in Chicago, Illinois and incorporated under Delaware law. Prior to its merger with Continental Airlines, United Airlines, Inc. was the entity that created and operated the frequent flyer program at issue in this case, Mileage Plus.

**ANSWER:** Defendants admit that United Air Lines, Inc. is a wholly owned subsidiary of United Continental Holdings, Inc. and that United Air Lines, Inc. is located in Chicago, Illinois and incorporated under Delaware law. Defendants deny the allegations contained in the last sentence of paragraph 9 and state that United created and operated the Mileage Plus program

prior to its merger with Continental Airlines and that United has continued to operate the MileagePlus program since the merger.

### III. Jurisdiction and Venue

10. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, far exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the Class of Plaintiffs, whose number exceeds 100, are citizens of states different from United. Further, greater than two-thirds of the class members reside in states other than the states in which Defendants are a citizen.

**ANSWER:** The first sentence of paragraph 10 states a legal conclusion as to which no answer is required or given. Defendants admit that greater than two-thirds of the individuals who were Million Mile Flyers as of December 31, 2011 reside in states other than Delaware and Illinois, deny the allegations contained in paragraph 10 concerning the amount in controversy and deny that this case is appropriate for certification as a class action.

11. Venue is proper in this Court under 28 U.S.C. § 1391 because the actions at issue took place, in whole or in part, within this District.

**ANSWER:** Paragraph 11 states a legal conclusion as to which no answer is required or given.

### IV. The Facts

12. In the 1980's, United Airlines had a world class frequent flyer program for its customers called Mileage Plus. Under this program, frequent flyers on United Airlines would receive valuable benefits in exchange for purchasing tickets to fly on United flights.

**ANSWER:** Defendants admit that in the 1980s United created a frequent flyer program called Mileage Plus pursuant to which United provided benefits, subject to the program's terms and conditions, to members of the program who accumulated mileage by, among other things,

5

travelling on United flights. Defendants are without knowledge or information sufficient to form a belief as to what Plaintiff means by the phrase "world class." Defendants deny the remaining allegations contained in paragraph 12.

13. As with most frequent flyer programs, United created various levels of status among Mileage Plus members based on the number of miles each customer would fly on United flights.

**ANSWER:** Defendants admit that the Mileage Plus program included various levels of status but deny that the allegations contained in paragraph 13 fully or accurately describe the factors that determined a particular member's status.

14. The second to top tier in the Mileage Plus Program was the Premier Executive, awarded to customers who flew 50,000 or more elite qualifying miles within a calendar year. United awarded customers who had flown one million miles with lifetime Premier Executive status, inclusive of all Premier Executive benefits. To obtain this status, a United customer needed to actually fly one million or more miles on United flights only. In other words, unlike programs today, one could not reach the Million Mile status through any non-flying means, such as an airline credit card, or by flying on any other "partner" or "code share" airline.

**ANSWER:** Defendants admit the allegations contained in the first and third sentences of paragraph 14. With respect to the second sentence of paragraph 14, defendants admit that beginning on or about July 1997, customers who flew one million miles received benefits at the 50,000-mile status level, which at the time was branded as the Premier Executive level. With respect to the last sentence of paragraph 14, defendants admit that there have been frequent flyer programs that allow members to reach million mile status by flying on partner or code-share airlines or by making purchases on an airline credit card.

15. The Million Mile Program was not simply a gimmick or give-away product under which United could change the rules any time it wanted. It was a bargained-for program whereby consideration was given – and taken – by both United and the Million Mile Flyer members.

**ANSWER:** Defendants deny that United ever had a "Million Mile Program" that was separate and distinct from its Mileage Plus (now MileagePlus) program, admit that the benefits United provided to Mileage Plus members who qualified for Million Mile Flyer status were not a "gimmick," and deny the remaining allegations contained in paragraph 15.

16. Given the hundreds of thousands of dollars Million Mile Flyer members would pay for the required airline tickets and corresponding status, United provided – in exchange – certain lifetime benefits.

**ANSWER:** Defendants deny the allegations contained in paragraph 16.

17. The lifetime benefits Million Mile Flyers paid consideration for included:

    a. A one-time award of three system-wide upgrades;

    b. Two free regional upgrades every year;

    c. A 100% redeemable bonus on the miles the customer flies every year; and

    d. Lifetime Premier Executive status in United's Mileage Plus Program, providing extra benefits and priorities such as booking availability, pre-boarding advantages, upgrade possibilities, and seating priority.

**ANSWER:** Defendants deny the allegations contained in paragraph 17.

18. To be sure, obtaining Million Mile Flyer status was no small – or inexpensive – feat. Again, all Million Mile Flyers obtained that status only through the purchase of actual tickets for United flights. To say the least, acquiring a million miles is very expensive. By way of example, various published aviation data suggests the average domestic flight in the United States is approximately 1,100 miles with the corresponding average coach fare being $300. Using these figures, an average customer would spend approximately $273,000 just to reach one million miles. On the other side of the coin is United Airlines, which reaped millions – if not billions – of dollars from Million Mile Flyer members.

**ANSWER:** Defendants admit that, apart from those Million Mile Flyers who qualified for that status as a result of the one-time December 31, 2011 recalibration, Mileage Plus members obtained Million Mile Flyer status by flying one million miles on United flights, and further admit that at least some Mileage Plus members who obtained Million Mile Flyer status paid for tickets to travel on at least some United flights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 concerning the cost of obtaining Million Mile Flyer status. Further answering, Defendants state that Million Mile Flyers who purchased tickets for travel on United flights received consideration from United for the price paid for those tickets in the form of carriage to their destinations on United aircraft. Defendants deny the remaining allegations contained in paragraph 18.

19. On October 1, 2010, United Airlines merged with Continental Airlines. The resulting company is Defendant, United Continental Holdings, Inc.

**ANSWER:** Defendants deny the allegations contained in paragraph 19. Further answering, defendants state that on October 1, 2010, United Air Lines, Inc. closed its legal merger with Continental Airlines, Inc. and that both companies are now owned by United Continental Holdings, Inc.

20. Following the merger, members of the Million Mile Program were assured by United that their lifetime, bargained-for benefits would not be affected.

**ANSWER:** Defendants deny the allegations contained in paragraph 20.

21. United made this specifically clear on its website, wherein the following question and answer were posted in October 2011:

> **Q. Now that the merger has legally closed, what will happen to my Million Mile Program lifetime status benefits:**
>
> **A. You will continue to receive your benefits as you always have. Lifetime elite benefits will continue in the single, combined program, which will be announced by the end of 2011.**

**ANSWER:** Defendants admit that United posted the statements quoted in paragraph 21 on its website. Defendants deny the remaining allegations contained in paragraph 21.

22. However, United acted 180 degrees opposite this assurance when it rolled out the combined post-merger frequent flyer program. The combined program, called MileagePlus (the same name as the former United Program, only absent a space between the words), merged the frequent flyer programs of United Airlines and Continental Airlines and went into effect on January 1, 2012. When that occurred, United took away the promised and bargained-for lifetime benefits of Million Mile Flyers.

**ANSWER:** Defendants admit the allegations contained in the second sentence of paragraph 22. Defendants deny the remaining allegations contained paragraph 22.

23. When the new MileagePlus Program went into effect on January 1, 2012, it resulted in an immediate and significant retroactive demotion of benefits to Million Mile Flyers. There are four tiers of classification under MileagePlus. In order of ascending benefits, these categories include: (1) Premier Silver (for those who fly at least 25,000 miles per year); (2) Gold (50,000 miles or more per year); (3) Platinum (75,000 miles or more per year); and (4) 1K (100,000 miles or more per year).

**ANSWER:** Defendants admit the allegations contained in the second sentence of paragraph 23. With respect to the third sentence of paragraph 23, defendants admit that MileagePlus Premier status has four levels: (1) Premier Silver (25,000 Premier qualifying miles or 30 Premier qualifying segments); (2) Premier Gold (50,000 Premier qualifying miles or 60

9

Premier qualifying segments); (3) Premier Platinum (75,000 Premier qualifying miles or 90 Premier qualifying segments); and (4) Premier 1K (100,000 Premier qualifying miles or 120 Premier qualifying segments). Defendants deny the remaining allegations contained in paragraph 23.

24. Prior to the merger and roll-out of the MileagePlus Program, Million Mile Flyers were guaranteed Lifetime Premier Executive status for life. Lifetime Premier Executive status was the second tier of status available. Under the new MileagePlus Program, however, Million Mile Flyers are now members of the third tier Gold status. The result is a severe cut in benefits including fewer bonus miles for flights, a reduced chance of upgrades, and lower priorities in boarding and seating assignments.

**ANSWER:** Defendants admit that Million Mile Flyers were and are members of the 50,000-mile status level. Defendants deny the remaining allegations contained in paragraph 24.

25. In addition, under the MileagePlus Program, Million Mile Flyers no longer receive a 100% bonus on the miles they fly with United. Instead, the percentage has been cut in half to only 50%.

**ANSWER:** Defendants admit that certain Million Mile Flyers no longer receive a 100% bonus on the miles they fly with United. Defendants deny the remaining allegations contained in paragraph 25.

26. In addition, under the MileagePlus Program, first time Million Mile Flyers no longer get a one-time award of three system-wide upgrades.

**ANSWER:** Defendants admit the allegations contained in paragraph 26.

27. In addition, under the MileagePlus Program, Million Mile Flyers no longer get the promised and bargained-for two regional upgrades per year.

10

**ANSWER:** Defendants admit that, under the MileagePlus Program, certain Million Mile Flyers no longer receive two regional upgrades per year. Defendants deny that United promised or that the parties bargained for such upgrades.

28. In stark contrast to the gutting of promised and bargained-for benefits for Million Mile Flyers, the new MileagePlus Program perversely and arbitrarily rewards former members of Continental Airlines' former Continental One Pass ("One Pass") frequent flyer program. Under One Pass, Continental customers could obtain "miles" or credit without even stepping foot on a Continental plane. For example, One Pass members could obtain miles with credit card purchases or even flights on other airlines. Of course, Million Mile Flyers paid substantial consideration for their promised lifetime benefits in that they were required to obtain all the required miles by purchasing tickets only for United flights.

**ANSWER:** Defendants admit the allegations contained in the second and third sentences of paragraph 28. Further answering, Defendants state that on December 31, 2011, United made a one-time recalibration of the mileage earned by Mileage Plus members toward Million Mile Flyer status, pursuant to which United counted miles earned by means other than flying on United flights, such as by using a United credit card or flying on partner airlines, toward Million Mile Flyer status under the post-merger MileagePlus program. Defendants deny the remaining allegations contained in paragraph 28.

29. United received substantial compensation and consideration from Million Mile Flyers in exchange for the benefits it now has taken away. United's egregious actions, if left unabated, will result in its unlawfully and unjustly retaining the millions upon millions of dollars it received from Million Mile Flyers.

**ANSWER:** Defendants deny the allegations of paragraph 29.

30. Indeed, it is clear from recent comments made by the highest executives at United that it intends to continue its denial of the Class's bargained-for benefits. On May 17, 2012, United's Chief Financial Officer, John Rainey, told an audience at the Bank of America Merrill Lynch Global Transportation Conference that certain

members of the Mileage Plus Program were "over entitled." This cavalier attitude is wholly consistent with United's intent to retroactively rescind benefits it had already agreed to provide – in exchange for the millions of dollars it received in return.

**ANSWER:** Defendants deny that United has denied Million Mile Flyers any "bargained-for benefits," deny that United had any obligation to continue providing the same benefits to Million Mile Flyers (or any other members of MileagePlus), and deny the remaining allegations contained in paragraph 30.

## V. Class Action Allegations

31. This action is brought as a class action by Plaintiff on behalf of himself and the following proposed class ("Class"):

    All persons, as of midnight, December 31, 2011, who were members of the Million Mile Program under United Airlines' Mileage Plus frequent flyer program.

    Excluded from the Class are Defendants; the officers, directors, and employees of Defendants; any entity in which Defendants have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendants; any federal, state, or local government entity; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

**ANSWER:** Defendants admit that Plaintiff purports to bring this action on behalf of a purported class but deny that there is now or ever has been a "Million Mile Program" that is separate or distinct from the MileagePlus program and deny that certification of a class is appropriate in this case.

32. This action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

**ANSWER:** Defendants deny that certification of a class is appropriate in this case.

12

33. **Numerosity**. Plaintiff is informed and believes that there are at least thousands of Class members throughout the United States. As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

**ANSWER:** Defendants admit that as of December 31, 2011, prior to the one-time mileage recalibration, there were thousands of Million Mile Flyers in the United States. Defendants deny that certification of a class is appropriate in this case and deny the remaining allegations contained in paragraph 33.

34. **Commonality**. There are numerous questions of fact and/or law that are common to Plaintiff and all the members of the Class, including, but not limited to the following:

   a. whether United breached its contractual obligations to the Class;

   b. whether United breached the covenant of good faith and fair dealing;

   c. whether United has been unjustly enriched;

   d. whether Class members have suffered damages;

   e. whether United's taking away of the Class members' bargained-for benefits entitles Plaintiff and the Class to equitable relief; and

   f. whether, and what form of, relief should be afforded Plaintiff and the Class.

**ANSWER:** Defendants deny that certification of a class is appropriate in this case. Further answering, Defendants state that the allegations contained in subparts b and c of paragraph 34 should be stricken because the Court has dismissed Plaintiff's claims for breach of the covenant of good faith and fair dealing and unjust enrichment. Defendants deny that United breached any contractual obligations to Plaintiff or any other member of the purported class, deny that United has taken away any "bargained-for benefits" of the Plaintiff or any other member of the purported class, deny that Plaintiff and the members of the purported class are entitled to any relief, and deny the remaining allegations contained in paragraph 34.

35. **Typicality**. Plaintiff is a member of the Class and has claims that are typical of all of the members of the Class. Plaintiff's claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class.

**ANSWER:** Defendants deny the allegations contained in paragraph 35 and deny that certification of a class is appropriate in this case.

36. **Adequacy of Representation**. Plaintiff will fairly and adequately represent the interests of the members of the Class. Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class. Plaintiff has retained competent counsel experienced in class action and other complex litigation.

**ANSWER:** Defendants deny the allegations contained in paragraph 36 and deny that certification of a class is appropriate in this case.

37. **Predominance**. Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.

**ANSWER:** Defendants deny the allegations contained in paragraph 37 and deny that certification of a class is appropriate in this case.

38. **Superiority**. A class action is superior to all other feasible alternatives for the resolution of this matter. Individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

**ANSWER:** Defendants deny the allegations contained in paragraph 38 and deny that certification of a class is appropriate in this case.

39. **Manageability**. This case is well suited for treatment as a class action and can easily be managed as a class action because evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

**ANSWER:** Defendants deny the allegations contained in paragraph 39 and deny that certification of a class is appropriate in this case.

40. Defendants have acted on grounds generally applicable to the Class by uniformly attempting to take away their bargained-for benefits, a scheme Defendants clearly intend to continue to perpetrate in the future. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

**ANSWER:** Defendants deny the allegations contained in paragraph 40 and deny that certification of a class is appropriate in this case.

## VI. Causes of Action

### COUNT I – Breach of Contract

41. Plaintiff incorporates the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Defendants incorporate their responses to paragraphs 1 through 40 of this Answer as though fully set forth herein.

42. Plaintiff and the Class had a contractual relationship with United.

**ANSWER:** Defendants admit that Plaintiff had a contractual relationship with United based on his enrollment in the MileagePlus program. Defendants deny that certification of a class is appropriate in this case.

15

43. The contractual relationship was supported by consideration by and for all parties.

**ANSWER:** Defendants admit that Plaintiff provided consideration by enrolling in the MileagePlus program.

44. Plaintiff and the Class purchased airline tickets for United flights.

**ANSWER:** Defendants admit that Plaintiff flew on United flights. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff personally purchased the tickets for those flights. Defendants deny that certification of a class is appropriate in this case.

45. In return, United provided the benefits discussed above that were associated with membership in the Million Mile Program.

**ANSWER:** Defendants deny the allegations contained in paragraph 45.

46. Plaintiff and the Class performed all of their obligations under the contractual relationship.

**ANSWER:** Defendants deny that Plaintiff had any obligations under the contractual relationship between Plaintiff and United that was created by Plaintiff's enrollment in the Mileage Plus program, deny that certification of a class is appropriate in this case and deny the remaining allegations contained in paragraph 46.

47. United did not. Instead, as explained in detail above, United breached its obligations and retroactively ceased providing Plaintiff and the Class their bargained-for benefits under the Million Mile Program.

**ANSWER:** Defendants deny the allegations contained in paragraph 47.

48. As a result of United's breach, Plaintiff and the Class have been damaged.

**ANSWER:** Defendants deny the allegations contained in paragraph 48.

## COUNT II – Breach of Good Faith and Fair Dealing

Count II of the Complaint has been dismissed by the Court and, accordingly, no answer to the allegations contained in that Count is required or given.

## COUNT III – Unjust Enrichment

Count III of the Complaint has been dismissed by the Court and, accordingly, no answer to the allegations contained in that Count is required or given.

## COUNT IV – Specific Performance

The Court has held that because specific performance is not an independent cause of action, Count IV of the Complaint is a nullity and, accordingly, no answer to the allegations contained in that Count is required or given.

## ADDITIONAL DEFENSES

1. Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2. Plaintiff lacks standing to assert his purported claim.

3. The contract asserted by Plaintiff is too indefinite to be enforced.

4. Plaintiff's claim is barred by the statute of frauds.

5. Plaintiff's claim is barred by the equitable doctrines of laches, estoppel, waiver and/or ratification.

6. Plaintiff's claim is barred by the applicable statute of limitations.

7. Defendants have fully performed their obligations.

8. Defendant United Continental Holdings, Inc. is not a proper party.

9. Plaintiff has failed to mitigate his damages.

10. Plaintiff has no legal basis to seek any award of attorney's fees, expert's fees or costs.

11. Plaintiff is not entitled to injunctive relief, specific performance or any other equitable relief.

12. Defendants reserve the right to assert any other defenses that may become available or appear during the discovery proceedings or otherwise in this case.

## JURY DEMAND

Defendants request trial by jury on all issues so triable.

Dated: February 13, 2013				Respectfully submitted,

								 /s/ Sondra A. Hemeryck
								Patricia Brown Holmes
								E-mail: pholmes@schiffhardin.com
								Sondra A. Hemeryck
								E-mail: shemeryck@schiffhardin.com
								Ayad P. Jacob
								E-mail: ajacob@schiffhardin.com
								SCHIFF HARDIN LLP
								233 South Wacker Drive, Suite 6600
								Chicago, Illinois 60606
								Telephone: (312) 258-5500

								Attorneys for Defendants United Continental Holdings, Inc. and United Air Lines, Inc.

**Certificate Of Service**

I hereby certify that on February 13, 2013, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        /s/ Sondra A. Hemeryck
                                Attorney for Defendants United Continental Holdings, Inc. and United Air Lines, Inc.