**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GEORGE LAGEN, | ) | |
| | ) | Case No.  12-cv-4056 |
| Plaintiff, | ) | |
| | ) | Judge Harry D. Leinenweber |
| v. | ) | |
| | ) | Magistrate Judge Young B. Kim |
| UNITED CONTINENTAL HOLDINGS, INC. | ) | |
| and UNITED AIRLINES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND.................................................................................2

    A.    The Million Mile Flyer Program................................................................2

    B.    Plaintiff George Lagen's Journey to 1,000,000 Miles...............................4

    C.    United's MileagePlus Program Rules.........................................................5

III. LEGAL STANDARD ..........................................................................................5

IV. ARGUMENT ........................................................................................................6

    A.    PLAINTIFF HAS MET THE BURDEN ESTABLISHED BY THIS COURT IN ITS OPINION ON DEFENDANTS' MOTION TO DISMISS ...........................................................................................7

    B.    PLAINTIFF HAS ESTABLISHED A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER A SEPARATE AND INDEPENDENT CONTRACT EXISTED BETWEEN MR. LAGEN AND DEFENDANTS RELATED TO HIS ATTAINMENT OF MILLION MILE FLYER STATUS..........................8

        1.    Plaintiff Reasonably Believed that, by Flying 1,000,000 In-Flight Mile on United, he Could Bind United to its Offer of Lifetime Benefits ..............................................................9

        2.    Defendants Have Not Challenged the Remaining Elements of Plaintiff's Claim for Breach of Contract ..................................11

    C.    THE 1993, 2006 AND 2011 PROGRAM RULES RELIED UPON BY DEFENDANTS ARE INAPPLICABLE TO MILLION MILE FLYERS..........................................................................................12

V. CONCLUSION ...................................................................................................14

**TABLE OF AUTHORITIES**

**Cases**

*360Networks Tennessee, LLC v. Illinois Cent. R. Co.*,
No. 05 C 3198, 2007 WL 1423880 (N.D. Ill. May 10, 2007) ................................6

*360Networks Tennessee, LLC v. Illinois Central R. Co.*,
No. 05 C 3198, 2009 WL 3578229 (N.D. Ill. Oct. 26, 2009) ................................6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242  (1986)................................................................6

*Architectural Metal Sys., Inc. v. Consolidated Sys., Inc.*,
58 F.3d 1227 (7th Cir. 1995) .....................................................9

*DiLorenzo v. Valve & Primer Corp.*,
347 Ill.App.3d 194 (2004) ........................................................8

*Goose Island Dev. Corp. v. Preferred Invs. IX Ltd. P'ship*,
No. 92 C 2250 (N.D. Ill. Sept. 3, 1992)...........................................6

*Grossman v. USAir, Inc.*,
No. 0109, 1997 WL 1433744 (Pa. Com. Pl. Apr. 16, 1997) ................................13

*Halloran v. Dickerson*,
287 Ill.App.3d 857 (1997) ........................................................8

*Henderson-Smith & Assoc., Inc. v. Nahamani Family Serv. Ctr., Inc.*,
323 Ill.App.3d 15 (2001) .........................................................8

*Lagen v. United Continental Holdings, Inc.*,
920 F.Supp.2d 912 (N.D. Ill. 2013) .........................................7, 8, 12

*Monzingo v. Alaska Air Group, Inc.*,
112 P.3d 655 (Alaska 2005)........................................................13

*Novick v. Staggers*,
No. 08 C 3733, 2012 WL 2325661 (N.D. Ill. June 19, 2012) ................................5

*Simon v. Continental Airlines, Inc.*,
No. 1:09-CV-631, 2010 WL 429932 (N.D. Ohio Feb. 4, 2010)...........................13

*Triple R Dev, LLC, v. Golfview Apartments I, LP*,
965 N.E.2d 452 (Ill.App.Ct. 2012) ................................................11

**Rules**

Fed. R. Civ. P. 56.1(a) ...................................................................................................1

I.    **INTRODUCTION**

Despite exceeding the page limit mandated by Local Rule 7.1 by six (6) pages and engaging in repeated violations of Local Rule 56.1(a)(3) in their Statement of Undisputed Material Facts, Defendants United Airlines, Inc. and United Continental Holdings, Inc. (collectively "United") have abjectly failed to demonstrate the absence of a genuine issue of material fact which would entitle them to Summary Judgment as a matter of law. Instead, the uncontroverted material facts in this matter unequivocally establish that Defendants entered into a separate contract with Plaintiff George Lagen whereby Plaintiff would fly 1,000,000 in-flight miles on United and, in return, Defendants would provide to Plaintiff certain lifetime benefits, including access to the benefits and privileges of Premier Executive status for life and confirmed regional upgrades.

Since the establishment of the Mileage Plus Program in 1981, United has repeatedly and consistently touted its unrelenting loyalty to its most frequent customers. As purported evidence of the depth of its appreciation, in 1997, United established the Million Mile Flyer Program (the "Program"), as a "reward for [its] most loyal flyers," specifically, those who had flown more than 1,000,000 in-flight miles on United flights. In accordance with the terms of the Program, upon the accumulation of 1,000,000 in-flight miles, members were to receive access to certain "lifetime" benefits. However, in the immediate aftermath of United's merger with Continental Airlines, Inc. ("Continental"), United eliminated Premier Executive status, provided Plaintiff with an inferior status designation and terminated Plaintiff's access to confirmed regional upgrades. United undertook this deprivation of Plaintiff's bargained-for, lifetime benefits, despite repeated and re-affirmed promises throughout 2009-10 that Million Mile Flyers would

1

"continue to receive 2 Regional Upgrades for life" and would "continue to receive [lifetime Program] benefits as [they] always [had]."

Therefore, as shown *passim*, Defendants' Motion for Summary Judgment should be denied because Defendants have failed to demonstrate the absence of a genuine issue of material fact which would entitle them to Summary Judgment as a matter of law.

## II.  FACTUAL BACKGROUND

### A.  The Million Mile Flyer Program

United announced the Million Mile Flyer Program in May 1997, within its Friendly Skies newsletter, as part of corporate effort to "reward [United's] most loyal flyers."  (R56.1(b), ¶ 1.) Specifically, the Program granted certain "lifetime" benefits to individuals who had accumulated in excess of 1,000,000 in-flight miles on United.    (R56.1(b), ¶¶ 1-2, 7-8, 11.)   Notably, "lifetime" as used in the context of the Program, was intended to mean "as long as they were really able to fly … as long as someone is coming on a plane and alive and capable of flying." (R56.1(b), ¶ 2.)

Even for the most dedicated of travelers, the accumulation of 1,000,000 in-flight miles required an average of 10-11 years.  (R56.1(b), ¶ 3.)  Due to the extensive amount of air travel required, this long-term commitment between United and its "most loyal flyers" necessitated individual financial contributions amounting to "hundreds of thousands of dollars."  (R56.1(b), ¶ 26.)

From May 1997 until March 2012, United awarded customers who had attained the status of Million Mile Flyer, "the benefits and privileges of Premier Executive status for life." (R56.1(b), ¶¶ 1-2, 7-8, 11, 15.)[1]  In 2006, the year that Mr. Lagen attained Million Mile Flyer

---

[1] No document produced by Defendants (UAL00001 – UAL 10928) states that Million Mile Flyers would receive "lifetime status at the 50,000-mile Premier level."  (R56.1(b), ¶ 11.)

status, the benefits associated with Premier Executive status in Mileage Plus included: (1) a 100% redeemable mileage bonus; (2) priority check-in; (3) priority boarding and seating; (4) priority status on the waitlist; and (5) complimentary e-upgrades. (R56.1(b), ¶ 9; Doc. 69, at ¶ 23.) Thereafter, in an attempt to make the Program more competitive, United added (2) confirmed regional upgrades, awarded annually, to the benefits available to Million Mile Flyers. (R56.1(b), ¶ 10.) Although these regional upgrades were not identified as a "published benefit" until late 2007 or early 2008, reward letters distributed by United to Million Mile Flyers as early as June 1999 enclosed "[t]wo one-way Confirmed Upgrade Certificates." (R56.1(b), ¶¶ 7, 10.)

In 2010, United merged with Continental (the "Merger"). (Doc. 69, at ¶ 39.) The combined entity thereafter became known as United Continental Holdings, Inc. ("UCH"). Prior to the Merger, United posted a series of Frequently Asked Questions ("FAQs") and Responses to address customers concerns. (R56.1(b), ¶¶ 13-16.) Through these FAQ Responses, United confirmed and re-affirmed that Million Mile Flyers would "continue to receive 2 Regional Upgrades for life" and would "continue to receive [lifetime Program] benefits as [they] always [had]." (R56.1(b), ¶¶ 13, 15.) Nevertheless, in March 2012, United eliminated Premier Executive status, provided Plaintiff with an inferior status designation and terminated Plaintiff's access to confirmed regional upgrades. (R56.1(b), ¶¶ 30-36.)

At that time, United "transitioned" Million Mile Flyers to lifetime Premier Gold status in the new "improved" system. (R56.1(b), ¶ 31.) As a result, instead of a 100% Redeemable Mileage Bonus, Million Mile Flyers now receive only a 50% Redeemable Mileage Bonus. (R56.1(b), ¶¶ 33-34.) Further, United's "re-branding" of MileagePlus resulted in the creation of an additional status level in the form of Premier Platinum (ostensibly a new second-tier). (R56.1(b), ¶ 30.) Consequently, based upon their now third-tier status in MileagePlus, Million

Mile Flyers are presently awarded a lesser waitlist and upgrade priority compared to the second-tier status previously afforded under the Mileage Plus Program. (R56.1(b), ¶¶ 4, 9, 30.)

### B. Plaintiff George Lagen's Journey to 1,000,000 Miles

Plaintiff George Lagen attained Million Mile Flyer status with United in September 2006, after averaging more than 118,000 in-flight miles per year over a ten-year period. (Doc. 69, at ¶ 23; R56.1(b), ¶ 25.) Prior to United's announcement of the Million Mile Flyer Program in 1997, Mr. Lagen had been a devoted member of British Airway's Executive Club frequent-flyer program. (R56.1(b), ¶ 19.) Indeed, before 1997, Mr. Lagen had not flown more than 22,415 in-flight miles on United flights in a calendar year. (R56.1(b), ¶ 20.) Shortly after United announced the Program, Peggy Claveria, a United customer service representative working at Chicago O'Hare International Airport, informed Mr. Lagen of the requirements and attendant benefits of Million Mile Flyer status, including lifetime access to the benefits and privileges of Premier Executive status in Mileage Plus. (R56.1(b), ¶ 21.) At that time, British Airways did not offer a comparable "million-miler" benefits package. (R56.1(b), ¶ 19.) Further, as of 1997, United was the only airline to afford "million-milers" the benefit of second-tier status in its frequent-flyer program. (R56.1(b), ¶ 5.) Accordingly, based upon the information provided to Mr. Lagen by Ms. Claveria and others at United, and the "lifetime" benefits related to accumulating 1,000,000 in-flight miles on United flights, Mr. Lagen switched to United for almost all of his air travel needs. (R56.1(b), ¶ 24.)

Moreover, at the time that Mr. Lagen attained Million Mile Flyer status, he believed he was thereafter entitled to a certain set of benefits that would never change, "because lifetime means lifetime." (R56.1(b), ¶ 28.) Consequently, Mr. Lagen believed that the Million Mile Flyer Program was separate from Mileage Plus. (R56.1(b), ¶ 27.) Indeed, Mr. Lagen would

never have flown United or sought to attain Million Mile Flyer status had he been aware that United would subsequently attempt to terminate his "lifetime" benefits. (R56.1(b), ¶ 29.)

### C. United's MileagePlus Program Rules

United asserts that the MileagePlus Program Rules allegedly "in effect" from 1993 until 2011 govern the analysis of the instant action. (Doc. 69, at ¶¶ 9-11.) Plaintiff does not dispute that the MileagePlus Program Rules govern the relationship between United and MileagePlus members who are subject to annual qualification. (P's Resp. to Ds' SOUF, at ¶¶ 13-19.) However, the plain language of the 1993, 2006 and 2011 MileagePlus Program Rules cited by Defendants does not contain the phrase "Million Mile Flyer," nor does it reference the "Million Mile Flyer Program." (R56.1(b), ¶ 12.) Indeed, Million Mile Flyer status is not a "Premier level" within MileagePlus. (Doc. 69, at ¶¶ 16, 42.) Further, enrollment in MileagePlus is free, whereas the accumulation of 1,000,000 in-flight miles sufficient to attain Million Mile Flyer status necessitates a financial investment amounting to "hundreds of thousands of dollars." (Doc. 69, at ¶ 5; R56.1(b), ¶ 26.)

Moreover, reward letters distributed by United to individuals attaining Million Mile Flyer status expressly identify the distinction between an annual status in Mileage Plus and the independent status of Million Mile Flyer. (R56.1(b), ¶ 17.) Specifically, the subject reward letters state "[p]lease find enclosed all you need to enjoy your 1999 benefits: Your 1K membership card, identifying you as a Million Mile Flyer and one of our very best customers." (R56.1(b), ¶ 17.)

## III. LEGAL STANDARD

"Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Novick*

*v. Staggers*, No. 08 C 3733, 2012 WL 2325661 at *3 (N.D. Ill. June 19, 2012). A fact is material "if it could affect the suit's outcome under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party." *360Networks Tennessee, LLC v. Illinois Cent. R. Co.*, No. 05 C 3198, 2007 WL 1423880 at *3 (N.D. Ill. May 10, 2007). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party seeking summary judgment "has the burden of establishing the lack of any genuine issue of material fact." *360networks Tennessee, LLC v. Illinois Central R. Co.*, No. 05 C 3198, 2009 WL 3578229, *4 (N.D. Ill. Oct. 26, 2009). Further, the party opposing summary judgment "is entitled to the benefit of all favorable inferences that can reasonably be drawn from the underlying facts." *Goose Island Dev. Corp. v. Preferred Invs. IX Ltd. P'ship*, No. 92 C 2250, *2 (N.D. Ill. Sept. 3, 1992).

## IV.   ARGUMENT

Defendants proffer two distinct arguments in support of their Motion for Summary Judgment. First, Defendants assert that "Lagen cannot show that United ever communicated an offer to him regarding the benefits associated with the Million Mile Flyer status level before he qualified in September 2006." (Doc. 68, at 12.) Such a position is, however, flawed *ab initio*, as United does not (and cannot) dispute that: (1) it publicly announced the Million Mile Flyer Program in May 1997 (Doc. 69, at ¶20); (2) the original published benefit was "lifetime" status at the Premier Executive level of Mileage Plus (Doc. 68, at ¶ 25); and (3) Lagen has declared that he was aware of the requirements and attendant benefits of Million Mile Flyer status prior to September 2006 (R56.1(b), ¶ 23).

6

Second, Defendants improperly argue that "the MileagePlus Program Rules govern Lagen's status as a Million Mile Flyer and permit United to make changes to the benefits provided at the Million Mile Flyer status level." (Doc. 68, at 15.) In fact, the plain language of the 1993, 2006 and 2011 MileagePlus Program Rules cited by Defendants does not contain the phrase "Million Mile Flyer," nor does it reference the "Million Mile Flyer Program." (R56.1(b), ¶ 12.) Further, according to the Managing Director of MileagePlus, "lifetime," in the context of the Million Mile Flyer Program, was intended to mean "as long as they were really able to fly … as long as someone is coming on a plane and alive and capable of flying." (R56.1(b), ¶ 2.) As such, Defendants have abjectly failed to demonstrate the absence of a genuine issue of material fact which would entitle them to Summary Judgment as a matter of law.

A.      PLAINTIFF HAS MET THE BURDEN ESTABLISHED BY THIS COURT IN ITS OPINION ON DEFENDANTS' MOTION TO DISMISS

On January 31, 2013, this Court issued an opinion denying Defendants' Motion to Dismiss with respect to Plaintiff's breach of contract claim (the "Opinion"). *Lagen v. United Continental Holdings, Inc.*, 920 F.Supp.2d 912 (N.D. Ill. 2013). In its Opinion, the Court explicitly acknowledged that it could "not find any mention of Million Miler membership or the benefits a member receives after flying 1,000,000 miles" within the terms and conditions proffered by Defendants. *Id*. at 917. Further, "as Plaintiff and his purported class are not mere Mileage Plus members," the Court found it "plausible that Defendants had a contract with Million Miler members which differed from the contract they had with other Mileage Plus members." *Id*. Nevertheless, the Court noted that "as this case proceeds, it will be Plaintiff's burden to *prove* (not plead) that a contract exists between Plaintiff's proposed Million Miler class and United that differs from the Mileage Plus contract United argues is the contract Plaintiff seeks to enforce." *Id*. As this Memorandum and the attached Additional Facts in

7

Opposition to Defendants' Motion for Summary Judgment demonstrate, Plaintiff has not only

met this burden, he has exceeded it.

> **B.** **PLAINTIFF HAS ESTABLISHED A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER A SEPARATE AND INDEPENDENT CONTRACT EXISTED BETWEEN MR. LAGEN AND DEFENDANTS RELATED TO HIS ATTAINMENT OF MILLION MILE FLYER STATUS**

Defendants assert that Mr. Lagen is incapable of proving the existence of a separate and

independent contract related to his Million Mile Flyer status. (Doc. 68, at 11.) Specifically,

Defendants argue that Lagen cannot demonstrate that an offer was ever communicated to him by

United "regarding the benefits associated with the Million Mile Flyer status level before he

qualified in September 2006." (Doc. 68, at 12.)

The elements of a breach of contract action under Illinois law are: "(1) the existence of a

valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the

defendant; and (4) resultant injury to the plaintiff."[2] *Henderson-Smith & Assoc., Inc. v.*

*Nahamani Family Serv. Ctr., Inc.*, 323 Ill.App.3d 15, 27 (2001). To be enforceable, a contract

"must contain offer, acceptance and consideration … the agreement must also be sufficiently

definite so that its terms are reasonably certain and able to be determined." *DiLorenzo v. Valve*

*& Primer Corp.*, 347 Ill.App.3d 194, 199 (2004). A contract is sufficiently definite and certain

to be enforceable "if the court is able from its terms and provisions to ascertain what the parties

intended." *Halloran v. Dickerson*, 287 Ill.App.3d 857, 868 (1997).

---

[2] Pursuant to email correspondence dated June 26, 2013, the parties "agreed to delay damages discovery until after the Court rules on the parties' anticipated motions for summary judgment … [and] further agreed that damages (or lack thereof) cannot be raised in the context of those summary judgment motions." As a result, any damages resulting from Defendants' purported breach are not presently at issue and, therefore, will not be addressed within this Memorandum.

1. **Plaintiff Reasonably Believed that, by Flying 1,000,000 In-Flight Mile on United, he Could Bind United to its Offer of Lifetime Benefits**

Defendants contend that Plaintiff is incapable of producing evidence sufficient to support the provision of an offer under Illinois law. In Illinois, "[t]he test for an offer is whether it induces a reasonable belief in the recipient that he can, by accepting, bind the sender." *Architectural Metal Sys., Inc. v. Consolidated Sys., Inc.*, 58 F.3d 1227, 1229 (7th Cir. 1995). Here, beginning in May 1997, United expressly offered any individual who accumulated 1,000,000 in-flight miles on United, the opportunity to "retain the benefits and privileges of Premier Executive status for life." (R56.1(b), ¶ 1.) Notably, contrary to Defendants' assertions, no document produced by United in this litigation states that Million Mile Flyers would receive "lifetime status at the 50,000-mile Premier level." (R56.1(b), ¶ 11.) Instead, every document produced by Defendants states that Million Mile Flyers would "enjoy Premier Executive status for life," retain the benefits and privileges of Premier Executive status for life," or receive "lifetime Premier Executive status in our Mileage Plus Program." (R56.1(b), ¶ 11.) Further, it is uncontroverted that, as of 2006, the benefits attendant to Premier Executive status in Mileage Plus included a 100% Redeemable Mileage Bonus. (R56.1(b), ¶ 9.)

Moreover, it is also uncontroverted that, even as early as June 1999, certain Million Mile Flyers were receiving either two confirmed regional upgrades or two confirmed segments upgrades as a reward for their accumulation of 1,000,000 in-flight miles. (R56.1(b), ¶ 7.) In late 2007 or early 2008, these benefits, in the form of two (2) confirmed regional upgrades, awarded annually, were added as a "published benefit" of Million Mile Flyer status. (R56.1(b), ¶ 10.) Consequently, in 2009, United acknowledged and re-affirmed, via an online FAQ, that Million Mile Flyers would "continue to receive 2 Regional Upgrades for life." (R56.1(b), ¶ 13.)

9

Defendants' offer was initially communicated to Mr. Lagen by Peggy Claveria, a United customer service representative working at Chicago O'Hare International Airport. (R56.1(b), ¶ 21.) At that time, Ms. Claveria informed Mr. Lagen of the requirements and benefits attendant to the status of Million Mile Flyer. (R56.1(b), ¶ 21.) Specifically, Ms. Claveria told Mr. Lagen that, should he accumulate 1,000,000 in-flight miles on United, he would receive "lifetime" Premier Executive status. (R56.1(b), ¶¶ 21.) Subsequently, Ms. Claveria's statements were re-affirmed to Mr. Lagen by numerous other United customer service personnel, as well as via posts and screen captures available on www.flyertalk.com and advertisements and mailers distributed by United. (R56.1(b), ¶ 22.) Based upon this information, including the promise of "lifetime" Premier Executive (second-tier) status in Mileage Plus, Mr. Lagen switched to United for almost all of his air travel needs. (R56.1(b), ¶ 24.)

Given the plain language of United's offer, Mr. Lagen reasonably believed that, by accumulating 1,000,000 in-flight miles on United, he could bind United to its offer of lifetime benefits. (R56.1(b), ¶¶ 26-29.) Further, Mr. Lagen believed that the benefits attendant to Million Mile Flyer status would never change "because lifetime means lifetime." (R56.1(b), ¶ 28.) In effect, Mr. Lagen believed what this Court has already stated, that Million Mile Flyers "[were] not mere Mileage Plus members." (R56.1(b), ¶ 27-29.)

Prior to 1997, Mr. Lagen had not flown more than 22,415 in-flight miles on United in a calendar year. (R56.1(b), ¶ 20.) However, after learning of the Million Mile Flyer Program, Mr. Lagen flew an average of 118,000 miles per year, over a time period exceeding a decade, in an effort to attain Million Mile Flyer status. (R56.1(b), ¶ 25.) During that time period, Mr. Lagen spent "hundreds of thousands of dollars" in air travel solely on United flights. (R56.1(b), ¶ 26.) Importantly, Mr. Lagen would never have flown United or sought to attain Million Mile Flyer

status if he had been aware that United would subsequently attempt to terminate his "lifetime" benefits. (R56.1(b), ¶ 29.) Accordingly, Defendants' argument fails categorically, as it would require this Court to accept that Mr. Lagen switched airlines, dramatically increased his per year, in-flight travel on United and expended "hundreds of thousands of dollars," for no apparent reason. The truth, as discussed *supra*, is far more logical.

In sum, the terms of Defendants' offer were simple, fly 1,000,000 in-flight miles on United flights and receive "lifetime" Premier Executive status/benefits as well as the subsequent benefit of two (2) confirmed regional upgrades, awarded annually, for life. (R56.1(b), ¶¶ 1-2, 7-8, 11.) Consequently, these were the terms of the offer Plaintiff George Lagen reasonably believed he had accepted in September 2006 when he accumulated 1,000,000 in-flight miles on United. Therefore, Plaintiff has presented evidence of a separate and independent contract with United, related to his status as a Million Mile Flyer, sufficient to allow a jury to return a verdict in his favor. As such, Defendants have failed to demonstrate the absence of a genuine issue of material fact as to the existence of a separate and independent contract which would entitle them to Summary Judgment as a matter of law. Thus, Defendants' Motion for Summary Judgment should be denied.

### 2. Defendants Have Not Challenged the Remaining Elements of Plaintiff's Claim for Breach of Contract

Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment (Doc. 68) does not challenge the remaining elements of Plaintiff's claim for breach of contract, including: (1) acceptance; (2) consideration; (3) Plaintiff's performance; or (4) Defendants' breach. (Doc. 68, at 11-15.) Defendants, as the movants, have the burden of persuasion with respect to their Motion for Summary Judgment. *Triple R Dev, LLC, v. Golfview Apartments I, LP*, 965 N.E.2d 452, 456 (Ill.App.Ct. 2012). Thus, Defendants have failed to demonstrate a

11

genuine issue of material fact as to these elements.  Nevertheless, it is uncontroverted that:  (1) Plaintiff attained Million Mile Flyer status (Doc. 69, at ¶ 23); (2) United eliminated Premier Executive status (Doc. 69, at ¶ 42); (3) Million Mile Flyers no longer receive a 100% Redeemable Mileage Bonus (Doc. 69, at ¶ 43); and (4) Million Mile Flyers no longer receive two (2) confirmed regional upgrades, awarded annually (Doc. 69, at ¶ 44).  Accordingly, Defendants' Motion for Summary Judgment should be denied.

### C.       THE 1993, 2006 AND 2011 PROGRAM RULES RELIED UPON BY DEFENDANTS ARE INAPPLICABLE TO MILLION MILE FLYERS

Defendants improperly assert that "[t]he MileagePlus Program Rules govern Lagen's status as a MileagePlus Million Mile Flyer."  (Doc. 68, at 15.)  As argued *supra*, the contractual relationship governing Plaintiff's status as a Million Mile Flyer is separate and independent from the Program Rules governing Plaintiff's membership in MileagePlus.  Accordingly, Plaintiff does not dispute that the Program Rules govern the relationship between United and MileagePlus members who are subject to annual qualification.  (P's Resp. to Ds' SOUF, at ¶¶ 13-19.)  However, the plain language of the 1993, 2006 and 2011 MileagePlus Program Rules cited by Defendants does not contain the phrase "Million Mile Flyer," nor does it reference the "Million Mile Flyer Program."  (R56.1(b), ¶ 12.)  As such, Plaintiff believed that the Million Mile Flyer Program was separate from MileagePlus.  (R56.1(b), ¶ 27.)  Indeed, even this Court could "not find any mention of Million Miler membership or the benefits a member receives after flying 1,000,000 miles" within the terms and conditions proffered by Defendants.  *Lagen*, 920 F.Supp.2d at 917.

Further, contrary to Defendants' assertions, Million Mile Flyer is not a "Premier level" within MileagePlus.  (R56.1(b), ¶¶ 4, 30.)  Instead, under Mileage Plus, the "Premier levels" were Premier, Premier Executive and 1K, and under the "re-branded" MileagePlus, the "Premier

levels" are Premier Silver, Premier Gold, Premier Platinum and Premier 1K. (R56.1(b), ¶¶ 4, 30.) The distinction between "Premier" status and Million Mile Flyer status is further acknowledged by United's own correspondence to MileagePlus members who also independently qualified for Million Mile Flyer status. As early as June 1999, reward letters distributed by United stated "[p]lease find enclosed all you need to enjoy your 1999 benefits: Your 1K membership card, identifying you as a Million Mile Flyer and one of our very best customers." (R56.1(b), ¶ 17.) Notably, the correspondence specifically states that it encloses a 1K membership card in Mileage Plus, which *also* separately identifies the individual as a Million Mile Flyer.

Moreover, there are significant financial distinctions between mere enrollment in MileagePlus and the "long-term commitment" embodied by the Million Mile Flyer Program. Foremost, enrollment in MileagePlus is free, whereas the accumulation of 1,000,000 in-flight miles sufficient to attain Million Mile Flyer status necessitates a financial investment amounting to "hundreds of thousands of dollars." (Doc. 69, at ¶ 5; R56.1(b), ¶ 26.) It is this bargained-for consideration which creates the dichotomy (in the form of a separate and independent contract) between Million Mile Flyers and mere MileagePlus members. Consequently, MileagePlus members are subject to annual qualification as opposed to Million Mile Flyers who were promised "the benefits and privileges of Premier Executive status for life, in recognition of their loyalty to United." (R56.1(b), ¶ 1.)

Finally, the jurisprudence cited by United is inapplicable to the present litigation. Notably, every case cited by United, including *Simon*, *Monzingo* and *Grossman*, concerns modifications to the related airline's base-level frequent-flyer program. Defendants have not cited a single case which addresses the existence of a "program within a program" or the offer

13

and acceptance of bargained-for, "lifetime" benefits. Indeed, unlike general members of entry-level frequent flyer programs, Plaintiff, and other Million Mile Flyers, spent "hundreds of thousands of dollars" to earn the "lifetime" benefits expressly offered by United upon the accumulation of 1,000,000 in-flight miles. As such, the independent relationship between United and Plaintiff is not and cannot be governed by the same Program Rules relied upon by United.

Therefore, as Defendants have failed to produce evidence sufficient to demonstrate the absence of a genuine issue of material fact as to the applicability of the subject Program Rules, Defendants' Motion for Summary Judgment should be denied.

## V. CONCLUSION

Because Defendants have abjectly failed to demonstrate the absence of a genuine issue of material fact which would entitle them to Summary Judgment as a matter of law and because the uncontroverted material facts in the instant matter establish: (1) the existence of a contract between United and Plaintiff whereby Plaintiff would fly 1,000,000 miles solely on United flights and, in return, Defendants would provide Plaintiff with identified lifetime benefits, including Premier Executive status/benefits and confirmed regional upgrades; and (2) Defendants' breach of such contract; Plaintiff George Lagen respectfully requests that Defendants' Motion for Summary Judgment be DENIED in its entirety, the Court proceed to consideration of class certification and determination of damages, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

LATHAM LAW OFFICES

 /s/  David H. Latham
David H. Latham
Latham Law Offices
150 North Wacker Drive
Suite 1400
Chicago, Illinois 60606
Phone: 312.782.1910
Facsimile: 312.782.1917
Email: dhlatham@lathamlaw.net

and

John F. Edgar
Michael D. Pospisil
Boyce N. Richardson
EDGAR LAW FIRM LLC
1032 Pennsylvania Ave.
Kansas City, Missouri 64105
Telephone:  (816) 531-0033
Facsimile:  (816) 531-3322
E-mail:  jfe@edgarlawfirm.com
         mdp@edgarlawfirm.com
         bnr@edgarlawfirm.com

ATTORNEYS FOR PLAINTIFF

15

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2013, I filed a copy of the foregoing using the

Court's electronic filing system, which will send notification of this filing to all registered

attorneys of record. Parties may access this filing through the Court's system.

Patricia Brown Holmes
Sondra A. Hemeryck
Ayad P. Jacob
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
pholmes@schiffhardin.com
shemeryck@schiffhardin.com
ajacob@schiffhardin.com

Attorneys for Defendants United Continental Holdings, Inc.,
and United Airlines, Inc.


/s/  David H. Latham _____
Attorney for Plaintiff