**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEORGE LAGEN, on Behalf of Himself and All Others Similarly Situated,　　　　Plaintiff,　　v.　UNITED CONTINENTAL HOLDINGS, INC., and UNITED AIRLINES, INC.,　　　　Defendants. | Case No. 12 C 4056　Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

The Plaintiff, George Lagen (the "Plaintiff"), on behalf of himself and others similarly situated filed a Complaint against United Continental Holdings, Inc., and United Airlines (hereinafter, "United"), alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. The Defendants filed a Motion to Dismiss which the Court denied as to the breach of contact count, but granted as to the covenant of good faith and fair dealing and unjust enrichment counts.

### I. BACKGROUND

**"The Lord Giveth and the Lord Taketh Away" (Book of Job)**

The claim here is that when United merged with Continental Airlines, United unlawfully beached its contractual obligations

to its Million Miler flyer customers by revising downward the "lifetime benefits" the customers were to receive.  Plaintiff seeks to represent himself and United customers who had achieved "MillionMiler status."  The Court will presume knowledge of the specifics of the so-called "Lifetime Benefits" which were extensively described in the Court's earlier ruling.  Suffice to say that they were materially reduced.

The basis of United's Motion to Dismiss was that there was not a separate contract for those achieving the MillionMiler status, and that the actual contract between United and its customers was its "MileagePlus" program which clearly gave United the right unilaterally to reduce or eliminate benefits.  The Court denied the Motion to Dismiss on the grounds that the Complaint alleged a contact between United and its customers that was separate from its MileagePlus program.  The Court held that at that early stage of the litigation it was plausible that there, was in fact, an additional contract between United and its Million Mile customers that did not give United the right unilaterally to reduce benefits and that Plaintiff had adequately alleged a contract, breach and damages. The Court, however, did point out that "as the case proceeds, it will be Plaintiff's burden to prove (not plead) that a contract exists between Plaintiff's proposed Million Miler class and United that differs from the Mileage Plus contract.

The case proceeded through discovery and the parties have now filed Cross-Motions for Summary Judgment. The Plaintiff contends that it has been able to prove the existence of a separate contract between the Million Miler class and United, and United contends that it has not. The Court agrees with United that Plaintiff has not proved the existence of a separate contract between it and the Million Milers. Accordingly, the Court denies Plaintiff's Motion for Summary judgment and grants United's Cross-Motion for Summary Judgment.

## II. **DISCUSSION**

The relevant facts as to the summary judgment motions are taken from the respective Local Rule 56 Statements of Facts and are as follows.

United has operated a frequent-flyer program, called MileagePlus, since 1981. Enrollment is free and members receive various benefits for accumulating mileage credit by traveling on United flights as well as engaging in other activities such as purchasing items using a United Credit card. The Plaintiff enrolled in MileagePlus in 1993 by completing an enrollment form he received from a gate agent. The enrollment form in 1993 stated that the prospective member (1) acknowledged that he had read and understood the MileagePlus rules summarized on the form, and (2) agreed to be bound by the Rules. These "rules" have remained virtually unchanged throughout the relevant time period.

Paragraph 1 of the rules in effect at the time Plaintiff enrolled stated as follows:

> 1. Mileage Plus membership and its benefits are offered at the discretion of United . . . , and United has the right to . . . change the Program Rules, regulations, benefits, conditions of participation or mileage levels, in whole or in part, at any time, with or without notice, even though changes may affect the value of the mileage or certificates already accumulated.
>
> 1a. United may, among other things, withdraw, limit, modify or cancel any award; [or] increase the mileage or number of certificates required for any award. . . . Members, in accumulating mileage or certificates, may not rely upon the continued availability of any award or award level, and members may not be able to obtain all offered awards.

This provision, or an almost identical provision, has been in each published MileagePlus Program rules since that time.

Members of MileagePlus have the opportunity to qualify each year for one of several annual status levels within the MileagePlus program that offer additional benefits beyond those available to general MileagePlus members and are referred to as the "Premier Program" or the "Elite Program." These two programs are part of the MileagePlus Program. Prior to 2012, United had three published Premier levels: Premier, Premier Executive, and 1K. These status programs are each subject to the MileagePlus rules which include the right to reduce or modify benefits.

In 1997, United introduced the so-called Million Mile Flyer status level. United contends that this status level is part of its Mileage Plus Program and therefore subject to the MileagePlus rules including the right to reduce or modify benefits. Plaintiff contends that it was a free standing program independent of the MileagePlus Program. Plaintiff qualified for the Million Miler status in September 2006. He received a MileagePlus membership card which acknowledged his attainment of Million Miler status. Over the years, United has changed the benefits to which the Million Milers are entitled usually by providing enhanced benefits. On June 29, 2011, United announced that MileagePlus would be the single loyalty program for the merged airlines starting in 2012. The program also included many changes in the structure of the program which affected the Million Miler flyers by reducing some of the benefits which had previously been afforded to them.

Since United retained the right to "withdraw, limit, modify or cancel any award," it was incumbent upon Plaintiff to prove his contention that his status as a Million Miler flyer was "separate and distinct" from the MileagePlus program and its rules. His claim for breach of contract requires him to prove (1) the existence of a valid and enforceable contract; (2) performance by plaintiff; (3) breach by the defendant; and (4) resultant injury to the Plaintiff. *Zirp-Burnham, LLC v. E.*

*Terrell Associates, Inc.,* 826 N.E.2d 430, 439 (Ill. App. Ct. 2005). Here the existence of a valid and enforceable contract is the issue. A plaintiff seeking to enforce a contract must demonstrate that he received a valid offer, *i.e.,* that the defendant took some action that constituted an offer which would give a plaintiff the power to accept thus creating the "obligation called contract." *Eakins v. New England Mutual Life Ins. Co.,* 473 N.E.2d 439, 443 (Ill. App, Ct. 1984). An offer cannot bind the offeror until it is communicated to the offeree and he accepts. *Carroll v. Preferred Risk Ins. Co.,* 215 N.E.2d 801, 803 (Ill. I966).

The record shows that Plaintiff has not produced any evidence that United made him (and other putative class members) an offer to participate in a separate MillionMile Flyer program that was separate and apart from the MileagePlus program. The sum total of his evidence is vague references to "electronic and written correspondence" from United which, in both instances, postdates his qualification as a Million Mile Flyer and was not specifically directed to him; and a 1997 Newsletter from United announcing the creation of the program he could not remember receiving. However the card he did receive from United, admitting him to the MillionMile Flyer program, shows that his new status is clearly a status within the MileagePlus Frequent Flyer Program, as does the form letters United sent to applicants

advising them of their admission to the MillionMile Flyer program. In fact, Plaintiff in his Complaint alleges that the MillionMile Flyer program was part of the Mileage Plus program. He has not produced any document that comes close to substantiating that the programs were separate and distinct.

### III. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied. United's Cross-Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

Date:1/23/2014